**15 CV     0483**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X Index No. 15- cv-

MARSHALL VANDERMARK, ROBERT MATEER,
THOMAS TERMINELLI, as members of a
Class of approximately 190 Police Officers
Similarly Situated,

*JUDGE SEIBEL*

                    Plaintiffs,

             -against-

LAW ENFORCEMENT EMPLOYEES BENEVOLENT
ASSOCIATION, (LEEBA) and KENNETH N. WYNDER,
PRESIDENT OF LEEBA, and TERRENCE P. DWYER,

                  Defendants.

VERIFIED COMPLAINT
UNDER LABOR
MANAGEMENT
REPORTING &
DISCLOSURE ACT
FOR DAMAGES &
FOR DECLARITIVE
& INJUNCTIVE RELIEF

------------------------------------------------------------------x   Jury Trial Requested

### *CIVIL COMPLAINT*

Plaintiffs, Marshall Vandermark, Robert Mateer and Thomas Terminelli pro-se, complaining of the defendants, respectfully allege as follows:

## NATURE OF THE ACTION

Plaintiffs are Environmental Police officers, members of LEEBA in good standing and represented by LEEBA in collective bargaining with New York City ("NYC").  Plaintiff, Marshall Vandermark is or was a union delegate who participated in grievance filing and discipline proceedings for the benefit of rank and file members and designated a member of the Board of Directors of LEEBA.  Union membership is composed of approximately one hundred ninety members who form a single classification of Environmental

1

Police Officers ("EPOs") employed by NYC and include Plaintiffs Robert Mateer and Thomas Terminelli..

1. On September 14, 1959, Congress enacted Public Law 86-257 to provide for the reporting and disclosure of certain financial transactions and administrative practices of labor organizations and employers, to prevent abuses in the administration of unions and to provide standards with respect to the election of officers of labor organizations..

2. Public Law 86-257 is referred to and cited as the "Labor Management Reporting and Disclosure Act of 1959" ("LMRDA") or 29 U.S. Code § 401, et seq.

3. This legal action is commenced to redress: a) breaches of trust, b) corruption, c) abuses in the administration and practices of LEEBA toward its members, d) disregard and violation of the contractual rights of individual union members as those rights are delineated in the Bylaws and Constitution of LEEBA, e) for breach of the Bylaws and Constitution of LEEBA filed with the U.S. Labor Department in the year 2010 ("2010 Bylaws") and then amended retro-actively without membership approval, f) and to achieve a court order directed to defendants requiring them to observe and abide by the high standards of responsibility and ethical conduct

intended by Congress to protect the rights and interests of unionized employees, Plaintiffs and the public generally.

4. Plaintiffs seek declaratory and injunctive relief to remove the self proclaimed but unelected union president, Kenneth N. Wynder ("Wynder"), who was never elected to office in LEEBA and who appointed officers and members of the Board of Directors of LEEBA in violation of the filed 2010 Bylaws

5. Plaintiffs seek money damages and reimbursement of funds to be replaced back into union coffers where the President and officers of LEEBA failed to provide financial disclosure of expenditures and siphoned off union dues for purposes other than for the best interests of the membership while conducting union business contrary to requirements stated in LMRDA.

6. Plaintiffs allege deceptive and corrupt union practices, improper influencing of labor relations and activities in derogation of the union members rights to organize and conduct union business.

7. This action is brought pursuant to provisions in LMRDA, Labor Management Relations Act, 29 U.S.C. 183, et seq.; NY State Human Rights Law and under general common law for breach of contract and violations of state law applicable, jointly and severally to Defendants.

8. Plaintiffs are claiming willful and intentional violations of provisions in the LMRDA.

9. Plaintiffs seek damages where Defendants orchestrated, structured and implemented a corrupt business scheme to profit from the collection of union dues collected from union members through dues check-off extracted from their paychecks and for violations of the trust by the union president and LEEBA Board of Directors.

## JURISDICTION AND VENUE

10. This Court is conferred jurisdiction of the subject matter under 28 U.S.C. 1331, 1332, 1337(a), 2201(a), and LMRDA. There is supplemental jurisdiction (pendent jurisdiction) as to the claims based upon state law pursuant to 28 U.S.C. 1367.

11. Venue is proper in this judicial district under 28 U.S.C. 1391.

## THE PARTIES

12. Plaintiffs are union member in good standing with LEEBA while Marshall Vandermark is or was a union delegate of LEEBA who resides at 41 Overlook Dr., Sidney, NY 13838 and all plaintiffs reside in the State of New York.

13. LEEBA is a labor union certified by NYC on October 20, 2005 to represent EPOs in collective bargaining and maintains an office located at

4

277 Main St., Catskills, NY 12414 and regularly conducts business in New York City and the State of New York.

14.  Wynder is the president of LEEBA and resides at: 519 Thomas St., Stroudburg, PA. 18360.

15.  Terrence P. Dwyer ("Dwyer") is an attorney who owns or controls real estate in Catskills, New York and either rents or leases property to LEEBA, resides in New York and represents both LEEBA and Wynder as legal counsel.

16.  LEEBA became the designated collective bargaining agent for EPOs on October 20, 2005, and has served and filed  petitions before the National Labor Relations Board ("NLRB") to represent Seagate Police Officers, Sands Casino Security Guards, Yonkers Raceway Security Guards, Brinks Guards and San Manuel Indian Reservation Security Guards which are all private sector employee groups.  LEEBA was granted the right to represent Seagate Police Officers, Sands Casino Security Guards and Brink's Guards.

17. Upon information and belief, LEEBA filed financial disclosure for at least one of these groups for the years 2011, 2012 and filed financial disclosure for EPOs for the year 2013 after receiving direction from the U.S. Labor Department in the year 2014.

18.  Based on information and belief LEEBA failed to file or provide financial disclosure for EPO representation for the years, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012 and 2014.

## FACTS

19.  The Water Supply Act of 1906 created the Bureau of Water Supply Police and Aqueduct Police which evolved into the Department of Environmental Protection Police through legislative action.

20.   Water Supply Police were originally assigned to precincts in Peekskill, Garrison, Browns Station and High Falls, New York.

21.  Bureau of Water Supply Police ("BWSP") and Aqueduct Police combined to provide the first police agency in upstate NY granted multiple county police jurisdiction.

22.  During the year 1909, BWSP and Aqueduct Police were granted the right to transfer into NYC Police Department ("NYPD") and to become NYPD Officers.

23.  The NYC Administrative Code has recognized the right of Water Supply Police and Aqueduct Police to transfer into NYPD since the year 1908 and NYC Code still provides for transfer into NYPD to the present day in §13-634.  Where §13-634 in relevant part states:

"Transfer of members of the police force of the board of water supply

6

to the police department of the City of New York.  The member of the police force of the board of water supply of the city upon the termination of their service on such force by reason of the completion of the work for which they were appointed by such board shall be severally eligible for transfer to the position of patrolman in the office department of the city upon the written request in each case of the board, accompanied by the consent, also in writing, of the person to be transferred, and the further consent of the police commissioner."

24.  In the year 1983, BWS Police became the Department of Environmental Protection ("DEP") Police or Environmental Protection Police (EPO) and were designated "Police Officers" in New York State Criminal Procedure Law § 1.20.34 (o).

25.  In the year 1999, DEP Police jurisdiction was extended to include the five Burroughs of New York City.

26.  EPOs have been and are regularly commanded to enforce NY State Penal Law inside NYC and throughout the State of New York.  EPO jurisdiction extends throughout the State of New York and affects interstate commerce where the waterways they guard border on other states and where the waterways are used to transport goods in interstate commerce while EPOs are commanded to determine probable cause for arrests daily.

27. Since the year 1999, EPOs have worked closely with NYPD performing law enforcement functions inside NYC where they make arrests and determine probable cause for arrests.

28.  On October 20, 2005, NYC Office of Collective Bargaining ("OCB"), Certification Board certified LEEBA as the collective bargaining

agent for EPOs.

29.  Upon information and belief, Wynder appointed himself president of LEEBA in 2005 and has remained in the position without a membership election to the present day.

30.  Public Law 86-257: Title I -- Bill of Rights of Members of Labor Organizations provides:

> (4)  Protection of the Right to Sue—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator : Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof:  …"

### Civil Enforcement

Sec. 102.  Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.  Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

### Retention of Existing Rights

Sec. 103.  Nothing contained in this title shall limit the rights and remedies of any member of a labor organization under any State or Federal or before any court or other tribunal, or under the constitution and by bylaws of any labor organization.

### Right to Copies of Collective Bargaining Agreements

Sec. 104.  It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a

copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement. The provisions of section 210 shall be applicable in the enforcement of this section.

## Information as to Act

Sec. 105. Every labor organization shall inform its members concerning the provisions of this Act.

## **AS AND FOR A FIRST CAUSE OF ACTION**

31.  Plaintiffs incorporate all prior paragraphs with the same force and effect as if fully stated herein.

32. On February 13, 2014, Defendant Wynder signed a Memorandum of Agreement ("MOA") affecting the pay, working conditions and benefits of the members of LEEBA and the MOA contained a clause stating:

"The terms of the predecessor separate unit agreement shall be continued except as modified pursuant to this 2005-2008 LEEBA MOA."

33.  As members in good standing, prior to signing the MOA, Plaintiffs were required to be provided a copy of the MOA or given access to a copy of the MOA, along with a full explanation of its content, before it could be signed by Wynder but defendants failed to provide a copy and

failed or refused to explain the content of the MOA to the full membership prior to Wynder's signing of the MOA.

34.  Article X:  LEEBA Bylaws and Constitution ("2010 Bylaws" Ex. one) filed with the U.S. Labor Department in the year 2010 provides:

> "Any collective bargaining contracts which are negotiated on behalf of the members of the Association shall be ratified by the members covered by such contracts.  The Association will not enter into any contract which has not been approved by the members of the Association at a contract vote.

35.  Defendant, Wynder signed the MOA without pursuing membership ratification in violation of member rights in 2010 Bylaws.

36.  That in accordance with the LMRDA, Plaintiffs are provided a legal right to enforce the LEEBA Bylaws and Constitution as a contract and through this legal action Plaintiffs request the Court revoke the MOA and award damages resulting from the improper signing of the MOA without membership ratification.

## AS AND FOR A SECOND CAUSE OF ACTION

37. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1-36 with the same force and effect as if stated herein at length.

38. That the LMRDA provides that a national union must elect a president each and every 3 years.

10

39. Since defendant Wynder has never been elected president of LEEBA by the EPO membership and has refused to hold proper elections, he is acting in violation of the LMRDA and should be barred from the position. Where Article VI of the 2010 Bylaws provides:

"All officers of the Association shall be elected by a vote of the membership of the Association."

and

"The term of office for all positions on the Executive Board and the Board of Directors shall be three (3) years."

40. That Article IV of the LEEBA Bylaws filed with the U.S. Labor Department in 2010 provides:

"8. Any member in good standing who has been a member of his/her employment group for at least one (1) year prior to election shall be eligible to hold office. **The Executive Offices of President and First Vice-President shall be filled by any member who has served as an elected delegate for period of at least two (2) years prior to election.**"

41. Defendant Wynder was never an elected delegate or a member of an employment group represented by LEEBA and with respect to the filed 2010 Bylaws, he is therefore ineligible to hold office as LEEBA President.

42. Because Defendant Wynder is ineligible to hold the LEEBA President office, as defined in the 2010 filed Bylaws, his signature on any document(s) signed in this official capacity should be held void or voidable.

43. Because of Wynder's ineligibility to be LEEBA president,

Plaintiffs request declaratory and injunctive relief to remove Wynder from the office of President of LEEBA and to bar him from ever running for such office in the future.

44. Where Wynder signed the MOA as a president while ineligible to hold office, Plaintiffs seek relief in the form of a ruling that the MOA is unenforceable.

## **AS AND FOR A THIRD CAUSE OF ACTION**

45. Plaintiffs incorporate by reference all prior paragraphs and allegations with the same force and effect as if fully stated herein.

46. The LMRDA provides for financial disclosure of LEEBA income and expenses to be published by LEEBA and made available to the membership at least once each year.

47. LEEBA's filed 2010 filed Bylaws provide in Art. XII:

> "No later than the November meeting of the Executive Board, the Financial Secretary will present a budget for the approval of the full Board of Directors for the fiscal year which will be from the following January 1st through December 31st. The budget shall be approved by the Finance Committee before presentation to the Board of Directors. The budget shall contain at least the following terms (a) projected income from all sources, (b) proposed costs in all areas and programs, (c) a listing of all assets of the Association and (d) a listing of all liabilities of the Association."

Where there has never been a budget or approval of a budget, as prescribed in Art. XII, Plaintiffs request a Court order requiring Art. XII enforcement.

48. During the nine years that Defendant Wynder has acted as

President of LEEBA, he has failed to provide financial disclosure in accordance with requirements in the LMRDA and only provided limited disclosure after being so ordered by the U.S. Department of Labor.

49. Where 2010 Bylaws, Art. VI, <u>Financial Secretary</u> require:

> "d. keep an accurate record of receipts and disbursements and shall, once every two (2) months, <u>submit to the membership an operating statement of the financial transactions of the Association for the previous months</u>."

LEEBA has never provided an accurate record of receipts and disbursements or an operating statement to the membership while failing to provide financial statements for prior years of: 2005, 2006, 2007, 2008, 2009, 2010, 2011 or 2012.

50. As a direct consequence of the failure to provide financial disclosure to the membership, damages have occurred in the form of expenditures being made from union dues without justification and in direct violation of the best interests of the membership.

51. Article II in the LEEBA 2010 Bylaws filed with the U.S. Labor Department, in relevant part, state objectives of the Association:

> "i. to provide proper representation for all members in the enforcement of agreements, <u>enforcement of rights, promotion of the best interests of all members</u> collectively and individually"

52. The use of union dues, extracted from EPO paychecks in the form of dues check-off for expenditures not in the best of all members collectively

and individually have been made without full and complete disclosure in violation of Wynder's fiduciary duty and are compensable as damages in an amount to be determined by a jury.

## AS AND FOR A FOURTH CAUSE OF ACTION

53   Plaintiffs incorporate by reference all prior paragraphs with the same force and effect as if fully stated herein.

54.  LEEBA's Bylaws filed in 2010 with the U.S. Labor Department provide:

> "Dues: Full member dues shall be paid bi-weekly at the flat rate of $30.00 for a monthly rate of $60.00 and a yearly rate of $720.00.  Full members also pay an initiation fee of $25.00."

EPO Member dues were increased to $40.00 every 14 days because of a 28 day work cycle without change or amendment to the 2010 Bylaws.

55.  Article VI of the filed 2010 Bylaws of LEEBA state:

> "All officers of the Association shall be elected by a vote of the membership of the Association."

and

> "The terms of office for all positions on the Executive Board of Directors shall be 3 years."

Where Defendant Wynder and LEEBA have failed to abide by or support the above provisions during the entire 9 year period preceding this complaint in direct violation of the Bylaws, monetary damages are demanded.

14

56.  LEEBA's Bylaws filed in 2010, Article VI § 1 (c) provides the

President shall:  "countersign all checks drawn against the general funds of the
                  Association."

Upon information and belief, this provision was intended to safeguard union

funds but it has been blatantly violated during the entire tenure of Defendant

Wynder where he has signed and cashed checks against general funds of the

Association at will, without the safeguard of countersigned checks.

57.  Article VI § 7 (f) of the filed 2010 Bylaws provides:

"Financial Secretary:  The Financial Secretary shall:

        "Prepare and submit in January of each year a financial statement for
        the previous year."

No financial statements were prepared for each previous year and no

opportunity has been provided for Plaintiffs to review the finances of the

Association as required in Art. VII of the filed 2010 Bylaws.

58.  Article XII of the 2010 Bylaws, Annual Budget: provides:

        "No later than the November meeting of the Executive Board,
        the Financial Secretary will present a budget for the approval
        of the full Board of Directors for the fiscal year which will be
        from January 1st through December 31st."

Upon information and belief, the LEEBA EPO budget has never been

prepared or presented to the full Board of Directors and as a consequence the

Board never approved money expended by Defendant Wynder.  The General

Fund has been constantly depleted by Defendant Wynder without an

accounting or financial disclosure. Without accounting to the membership of LEEBA or providing a budget, Defendants violated provisions in the 2010 Bylaws and caused the membership to suffer damages in an amount to be determined by a jury.

59. The foregoing failure to properly budget the accounts of LEEBA combined with failure to provide financial disclosure to the membership amounts to a breach of fiduciary duty and provides a basis for this Court to award damages and injunctive relief.

60. For the foregoing reasons, Plaintiffs request this Court provide declaratory and injunctive relief in the form of removing defendant Wynder from the position of LEEBA president and provide a court order requiring a membership vote by secret ballot to elect a qualified candidate in accordance with the filed 2010 Bylaws. Request is made for monetary damages against Defendant Wynder for blatant disregard of the Bylaws and his failure to abide by the provisions in the LMRDA.

## AS AND FOR A FIFTH CAUSE OF ACTION

61. Plaintiffs repeat and reiterate all prior paragraphs with the same force and effect as if stated at length herein and incorporate by reference all prior paragraphs by reference.

62. Prior to August 20, 2014, Plaintiffs had never been given or seen a

copy of the LEEBA Bylaws although numerous requests were made to defendant Wynder asking him to produce a copy.  Without notice to the membership, LEEBA filed amended Bylaws and Constitution with the U.S. Labor Department and fraudulently stated on the amended Bylaws:

**"Originally adopted 10/05/2005 amended January 21, 2011"**

without providing prior notice to the membership and without membership approval required in Art. XVI of the filed 2010 Bylaws (see Ex. One).

63.  The submission of amended Bylaws and Constitution was purported to change:  a) the requirements for amending the Bylaws, b) changes to the requirements for membership ratification of agreements, and c) change the requirements to hold office in the union, among numerous other changes made without knowledge or approval of the membership in accordance with the filed 2010 Bylaws.

64. Upon information and belief, the amended Bylaws were intentionally back-dated with a false claim that they were adopted in the year 2005 to create the illusion that LEEBA management abided by the newly created and filed Bylaws where Wynder knew he had violated the filed 2010 Bylaws and he decided to back date new Bylaws because he was placed on notice of his flagrant violations of the filed 2010 Bylaws.

65  Upon information and belief, there was intent to fraudulently change the 2010 filed Bylaws to cover-up flagrant violations. While keeping the membership uninformed of the 2010 Bylaws, Wynder back-date and filed new Bylaws to prevent knowledge of his flagrant violations.

66.  That because the 2010 filed Bylaws Art. XVI contained requirements and restrictions that were flagrantly violated, the amended Bylaws should be ruled null and void without a majority membership vote for the changes as stated in the filed 2010 Bylaws:

> **"This Constitution and By-Laws may be amended, revised or otherwise changed by a majority vote of the members voting on such proposed change. Proposed amendments to the Constitution and By-Laws may be introduced by a member or members at a regular meeting of the Association. The proposed amendment will then be reviewed and commented upon by the Executive Board at the next regular or special meeting of the Association. After the Executive Board's review and comment, a vote will be taken among the members present at the meeting to determine if the proposed amendment shall be mailed out to all Association members for mail ballot on the proposed amendment. If the majority of mail ballots returned to the Association are in favor of the proposed amendment, the Amendment shall take effect immediately thereafter."**

67.  Plaintiffs hereby request this Court declare the amended Bylaws and Constitution void and order the filed 2010 Bylaws to remain in effect where a copy is attached herewith and made a part of this complaint.

## AS AND FOR A SIXTH CAUSE OF ACTION

68.  Plaintiffs repeat and reiterate all previous paragraphs with the

same force and effect as if fully stated herein.

69.   Upon information and belief, Defendant Terrence Dwyer has conducted business in New York State utilizing an entity known as Terramark Properties LLC which owns real property in Catskills, NY.

70. That in the financial disclosure filed by LEEBA for the year 2013, LEEBA paid rent and conducted business at 277 Main St., Catskills, NY in a building depicting ownership by Terramark Properties, LLC.

71. That while Defendant Dwyer collected rent from LEEBA for space Located at 277 Main St., Catskills, NY in the amount of $12,000.00/year LEEBA and also incurred association overhead in the amount of $55,109.00 and these amounts are excessive and unrealistic expenses for comparable space and services in the same geographic area.

72. That because Defendant Dwyer acted as a retained attorney for LEEBA, he unduly influenced the outlay of money from LEEBA funds and caused an overpayment for the use of the facility to the detriment of Plaintiffs who pay union dues to LEEBA.

73. That by the collection of excessive funds from LEEBA, Dwyer had a conflict of interest and he is required return money to the members of LEEBA for excessive fees and charges paid.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1. For all monetary damages recoverable as a matter of law against Defendants pursuant to provisions in 29 U.S.C. 183, et seq.

2. For all monetary damages recoverable as a matter of law against Defendants pursuant to provisions in 29 U.S.C. 401, et seq.

3. For injunctive and declaratory relief as provided in 29 U.S.C. § 401, et seq.

4. For recovery of all monetary damages as a matter of law against Defendants for breach of contract.

5. For equitable relief, including but not limited to the requested corrective action against all defendants involved in said wrong doing.

6. For such other and further relief as the Court may deem just, fair and equitable.

Respectfully,

Marshall Vandermark
Plaintiff, Pro-Se
41 Overlook Drive
Sidney, NY
(607) 604-4315

20

## VERIFICATION

State of New York]
            : ss :
County of ~~Suffolk~~]
          Delaware

I, Marshall Vandermark, after first being duly sworn state, I have read the herein complaint and verify the allegations contained in the complaint to be true from my own personal knowledge except as to the allegations alleged on information and belief and as to those allegations I believe them to be true.

Marshall Vandermark

Sworn to before me
This _20_ day of _Jan._, ~~2008~~ 2015

Notary Public

TIMOTHY J. CUTTING
Notary Public, State of New York
Qual. in Delaware Co. No. 01CU6193000
My Commission Expires Sept. 08, 20_16_

**COMPLAINT EXHIBIT ONE**

**LEEBA BYLAWS AND CONSTITUTION
FILED WITH U.S. DEPARTMENT OF LABOR
JANUARY 12, 2010**



544-264

### Constitution and By-Laws
### of the
### *Law Enforcement Employees Benevolent Association*

#### Preamble

The organization known as the Law *Enforcement Employees Benevolent Association* is formed for private and public sector law enforcement employees in order to provide an employee association dedicated to protecting and preserving their interests and welfare, improving their working conditions, establishing and administering collective bargaining agreements with employers and guaranteeing the individual rights and legal protections of each member.

#### Article I
#### Name

The name of this organization shall be the LAW ENFORCEMENT EMPLOYEES BENEVOLENT ASSOCIATION, herein referred to as L.E.E.B.A..

#### Article II
#### Purpose

The objectives of this Association shall be as follows:

a.    to unite within the Association all members employed in the law enforcement professions;

b.    to promote the interests of the law enforcement profession and to safeguard the rights, individually and collectively, of the members;

1

c.   to improve the wages, hours and conditions of work, protect members rights, better the working and living conditions of its members;

d.   to establish and maintain collective bargaining agreements with employers for the purpose of representing members and in making and maintaining employment relationships and agreements covering discipline, benefits, rates of pay, rules and working conditions for the members of the Association, and to settle promptly disputes and grievances which may arise between such members and their respective employers;

e.   to establish fair and equitable means of disciplining members by their respective employers;

f.   to establish fair rates of compensation, benefits, maximum hours of employment, uniform principles of seniority and fair treatment of members of the Association and to seek the adoption and perpetuation thereof;

g.   to urge, support and sponsor the passage of legislation, regulations, rules and laws affecting members of the Association which will improve, protect and increase the safety, health and welfare of the members;

h.   to make provisions for suitable pension, annuity, retirement, disability benefits and insurance benefits for all members of the Association through negotiations with employers, legislation, collective bargaining and other means;

i.   to provide proper representation for all members in the enforcement of agreements, enforcement of rights, promotion of the best interests of all members collectively and individually.

2

## Article III

### Membership and Dues

1. *Eligibility*     Any person over the age of twenty (20) and of good moral character who is actively employed or retired from a law enforcement profession shall be eligible for membership in the Association. Each member shall receive a membership certificate. The membership certificate shall contain the name of the member, the class of membership, the period of validity, and such additional information as may be deemed necessary. The membership certificate shall be signed by the President or Recording Secretary and bear the seal of the Association.

2. *Class of Membership* There shall be three (3) classes of membership: (i) Full Membership; (ii) Associate Membership; (iii) Honorary Membership.

3. *Description of Membership Classes* (i) FULL – any full or part-time member of a public or private law enforcement entity for whom the Association is the recognized employee bargaining representative. Full members shall have voting rights in Association elections and bargaining agreements. (ii) ASSOCIATE – any full or part-time member of a public or private law enforcement entity for whom the Association is not the recognized employee bargaining representative. Associate members shall not have any voting rights in Association elections but they will be entitled to participate, at their own expense, in Association sponsored health, dental and vision plans. (iii) HONORARY – any individual who has exhibited by word, deed and principle their commitment to the ideals and mission of the law enforcement profession is eligible, upon a vote of the Board of Directors, to be designated an Honorary Member of the Association.

4. *Application*     An application for membership shall be on a standard form provided for that purpose by the Recording Secretary. Each applicant by accepting membership in the Association agrees and subscribes without

3

reservation to all provisions, conditions and stipulations in the Constitution and By-Laws currently in effect or as they may be added to or amended.

5. *Membership Period*   The membership period for Full Members shall run from the January 1 to December 31 of each calendar year and shall automatically be renewed each year as long as the Association remains the bargaining representative for said class of members. The membership period for Associate Members shall run from the date of receipt of said membership application until one year later. Associate Members will be sent a renewal notice two months prior to expiration of the one year membership.  Associate Membership will be renewed upon the receipt and full payment of yearly dues. All membership lists which shall include the type and term of membership will be maintained by the Recording Secretary.

6. *Termination of Membership*  A Full Membership shall be terminated by a discharge from active law enforcement employment resulting from malfeasance or by voluntary resignation of the member's position within law enforcement. An Associate Membership shall be terminated by expulsion when a member remains three (3) months in arrears for membership dues. Any member convicted of a felony will be terminated form membership in the Association.

7. *Reinstatement of Membership*  Any member who has been terminated from membership for non-payment of dues or who has voluntarily resigned may submit an application for membership to the Association.   The application of a terminated member will be reviewed by the Recording Secretary and Financial Secretary who upon consent by the Association President may reinstate the member provided that all unpaid past dues are paid and the new membership is paid in full for the year.

8. *Dues*  Full Member dues shall be paid bi-weekly at the rate of $30.00 for a monthly rate of $60.00 and a yearly rate of $720.00. Full Members shall also pay

4

an initiation fee of $25.00. Associate Member dues shall be paid monthly at the rate of $10.00 for a yearly rate of $120.00. Associate Members shall also pay an initiation fee of $25.00.

## Article IV
## Board of Directors/Meetings

1. Regular meetings of the Association shall be held at a time and place to be fixed by the Board of Directors.

2. The affairs of the Association shall be managed and its funds and properties shall be controlled by the Board of Directors. The powers of the Board of Directors shall include, but shall not be limited to the following:

   a. to admit, suspend, or expel members;

   b. to audit bills;

   c. to employ, set salaries for, and discharge employees of the Association;

   d. to negotiate collective bargaining contracts.

3. The Board of Directors shall be comprised of the President, First Vice-President, Second Vice-President, Third Vice-President, Confidential Assistant to the President, Recording Secretary, Financial Secretary, and one delegate from each employment group represented in collective bargaining agreements by the Association.

4. Each Director shall hold office for a term of three (3) years. An election to fill the office of Director shall be in accordance with rules established by the Election Committee. A vacancy in the office of Director shall be filled from the

5

appropriate employment group by the Executive Board for a period not to exceed four (4) months. A special election in the appropriate employment group for the vacancy in the office of Director shall be held within three (3) months the vacancy occurs. It shall be the duty of the Board of Directors to immediately notify the members of the affected employment group of the vacancy upon the resignation of a Director. Each Director may designate an Alternate Director from his/her employment group to assist with the performance of duties.

5.    Regular meetings of the Association shall be held twelve (12) times a year at a time and place to be fixed by the Board of Directors. All members of the Association are invited and encouraged to attend the meetings.

6.    Notice of the time and place of the regular meetings of the Association shall be mailed to each Director at his/her address as it appears in the records of the Association. Such notices shall be given not less than ten (10) days nor more than thirty (30) days before the meeting. Special Meetings of the Board of Directors may be called by the Executive Board at its discretion. The President may call a Special Meeting of the Directors upon a request of a majority of the Board of Directors. Notice of a Special Meeting of the Board of Directors shall be given by personal telephone message or telegram to each of the Directors not less than two (2) days before the Special Meeting. Special Meetings shall be held at a location designated by the Executive Board.

7.    A majority of the members of the Board of Directors shall constitute a quorum at any meeting of the Board of Directors, but a number less than a quorum may adjourn such meeting without further notice until a quorum is present.

8.    Any member in good standing who has been a member of his/her employment group for at least one (1) year prior to election shall be eligible to hold office. The Executive Offices of President and First Vice-President shall be filled by any

6

member who has served as an elected delegate for period of at least two (2) years prior to election.

9.   The Election Committee shall consist of five (5) members of the Board of Directors. The Election Committee shall prescribe rules as may be necessary for the election of officers of the Association, the election of members of the Board of Directors, and the election of honorary members. All such rules shall be voted upon by the Board of Directors before implementation.

10.   Removal of a Director shall be in accordance with section 706 of the Not-for-Profit Corporation Law. Upon a request of a majority of the members of the Association that elected a Director of their employment group, the Board of Directors shall schedule a recall vote for that Director.

11.   (i) Each member of the Board of Directors shall be entitle to one (1) vote. The Director shall be entitled to vote on any matter submitted to the Board for action thereon at a meeting of the Board.

(ii) Any action required or permitted to be taken by the Board of Directors may be taken without a meeting if all members of the Board or Committee consent in writing to the resolution authorizing that action. The resolution and the written consent thereto by all members of the Board or Committee shall be filed with the minutes of the proceedings of the Board or Committee.

(iii) Any one or more members of the Board of Directors or of any Committee thereof may participate in a meeting of such Board or Committee by means of a telephone or similar communications equipment.

(iv) Except as otherwise specifically provided, the vote of the Directors present at the time the vote is taken shall be the action of the Board of Directors.

## Article V
### Executive Board

1.    There shall be an Executive Board, which shall consist of a President, First Vice-President, Second Vice-President, Third Vice-President, Confidential Assistant to the President, Recording Secretary and Financial Secretary. Subject to the control and general supervision of the Board of Directors, the Executive Board shall have the full power to manage the affairs of the Association, to conduct its business activities, to supervise its daily operation, to invest and re-invest its funds, and generally to supervise and control the operations of the Association.

2.    The Executive Board shall meet at the call of the President or of a majority of its members. A report on all actions taken by the Executive Board shall be made to the Association membership at the next following meeting. A majority of the members at the Executive board shall be required for a quorum.

3.    If a member of the Executive Board shall cease to be an officer of the Association, his/her membership on the Executive Board shall immediately terminate. In the event of such a vacancy the position shall be temporarily filled by appointment from the Board of Directors and within sixty (60) days an election shall be held to fill such vacancy.

## Article VI
### Officers

All officers of the Association shall be elected by a vote of the membership of the Association. If an officer shall be unopposed in an election, his name shall be sent out to the entire membership for a vote of confidence.

The terms of office for all positions on the Executive Board and the Board of Directors shall be three (3) years.

8

1. <u>President</u>   The President shall:

    a. preside at all meetings of the Association and of the Executive Board.

    b. be a member of all committees exception election committees.

    .c countersign all checks drawn against the general funds of the Association.

    d. appoint all standing committees and all special committees of the Association, subject to approval of the Executive Board.

    e. retain a General Counsel subject to approval of the Executive Board.

    f. report periodically to the membership regarding the progress and standing of the Association and regarding the President's official acts.

2. <u>First Vice-President</u>   The First Vice-President shall:

    a. assist the President in the work of the President's office.

    b. in the absence of the President or in the President's inability to serve, preside at all meetings and perform all duties otherwise performed by the President.

    c. upon approval by the Association Executive Board, be authorized to act as co-signer of checks drawn on the Association funds in place of either the President or the Financial Secretary.

3. <u>Second Vice-President</u>   The Second Vice-President shall:

a. in the absence of the President or First Vice-President or in their inability to serve, preside at all meetings and perform all duties otherwise performed by them.

b. oversee all fundraising undertaken by the Association.

c. fulfill any duties designated by the President to be completed by this office.

4.    <u>Third Vice-President</u>    The Third Vice-President shall:

a. oversee the completion and collection of all documentation, contracts, records logs, correspondence and minutes maintained by the Association.

b. fulfill any duties designated by the President to be completed by this office.

5.    <u>Confidential Assistant to the President</u>    The Confidential Assistant to the President shall:

a. provide counsel and guidance as requested by the President.

b. fulfill any duties designated by the President to be completed by this office.

6.    <u>Recording Secretary</u>   The Recording Secretary shall:

a.  keep a record of the proceedings of all membership meetings and of all Executive Board meetings.

b.  carry on the official correspondence of the Association, except as the Executive Board may direct otherwise.

c. perform such other duties as the Executive Board may require.

10

7.   <u>Financial Secretary</u>   The Financial Secretary shall:

a.  receive and receipt all monies, dues, funds and donations of the Association.

b.  d eposit a ll m oney so  r eceived in t he n ame of t he A ssociation i n a bank o r banks selected by the Executive Board, and money so deposited shall be withdrawn only by check signed by the President and the Financial Secretary.

c.  prepare and sign checks for such purposes as are required by the constitution or are authorized by the membership or the Executive Board.

d.  keep an accurate record of receipts and disbursements and shall, once every two (2) months, submit to the membership an operating statement of the financial transactions of the Association for the previous months.

e.  act as custodian for all properties of the Association.

f.   prepare and submit in January of each year a financial statement for the previous year.

Article VII

Trustees

The trustees shall annually review the finances of the Association, including the finances concerning any health and welfare, pension, insurance or other benefit program covering members of such Association, and shall report to the membership on the results of such audit.  The trustees shall be members of the Finance Committee.

Trustees shall be elected from the general membership for a two year term.  The total number of trustees shall be determined by the number of employment groups within the

11

Association.  Each employment group shall elect a member to serve as their trustee and representative on the Finance Committee.

## Article VIII

### Contracts and Liabilities

No officer (except the President and First Vice-President), Executive Board Member, person holding an elected or appointive position, organizer, employee, representative, or agent of the Association or of a subordinate organization shall make or be empowered to make any contract or incur any liability or act for the Association or represent, comment, or bind the Association or receive legal process on its behalf binding on the Association, unless authorized in writing by the Executive Board.  The Association shall not be liable under any contract or for any acts of such organization or any such person, unless authorized in writing by the Executive Board, by the President, or by the First Vice-President acting in place of the President, or for any conduct or act by any of them that violates this constitution and by-laws.

## Article IX

### Legal Counsel and Litigation

The President, by and with the consent of the Executive Board, may employ legal counsel to advance the aims and welfare of the Association.  Compensation for such counsel shall be fixed by the President, subject to the approval of the Executive Board, on a reasonable basis commensurate with the services to be rendered.

## Article X

### Approval of Contracts

Any collective bargaining contracts which are negotiated on behalf of the members of the Association shall be ratified by the members covered by such contracts.  The Association

will not enter into any contract which has not been approved by the members of the Association at a contract vote.

## Article XI

### Agency Shop

The Association shall elect to have deducted from the wage or salary of the employees who are not members of the Association the amount equivalent to the membership dues pursuant to Article III of this Constitution and By-Laws. Pursuant to Section 208(3)(a) of the Civil Service Law, the Association has established and will maintain a procedure providing for the refund to any employee demanding the return of any part of the agency shop fee deduction which represents the employee's pro rata share of expenditures by the Association in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment. Such procedure may be revised from time to time by the Board of Directors.

## Article XII

### Annual Budget

No later than the November meeting of the Executive Board, the Financial Secretary will present a budget for the approval of the full Board of Directors for the fiscal year which will be from the following January 1st through December 31st. The budget shall be approved by the Finance Committee before presentation to the Board of Directors. The budget shall contain at least the following items: (a) projected income from all sources; (b) projected costs in all areas and programs; (c) a listing of all assets of the Association: and (d) a listing of all liabilities of the Association.

13

## Article XIII
## Indemnification for Directors and Officers

1.    The Association shall provide indemnification for Directors and Officers in civil or criminal proceedings, subject to the provisions of paragraphs (2) and (3) below, relating to acts or decisions made by the Director or Officer in the performance of his or her duties as an Officer or Director of the Association under the following circumstances:

(a)     if the proceeding results in a judgment or other final adjudication and the Director or Officer is successful in defending the claim or claims, whether on the merits or otherwise, indemnification will be provided for the amount of legal and other expenses incurred by the Director or Officer in defending such claim or claims; or

(b)     if the proceeding is settled or otherwise disposed of without a final judgment or other final adjudication, or if the proceeding results in a judgment or other final adjudication adverse to the Director or Officer, indemnification for the amount of the settlement, judgment, or other disposition, including legal and other expenses in connection therewith, shall be made in the specific upon a vote of the majority of the members of the Board of Directors who were not parties to the proceedings, that the acts of the Director or Officer material to the cause of action were not committed in bad faith or as a result of active or deliberate dishonesty, and that the Director or Officer did not personally gain, in fact, a financial profit or other advantage to which he or she was not legally entitled.  In the alternative, a majority of disinterested Directors may direct (even if they do not constitute a majority of the Board of Directors) that the Board of Directors, with participation of the interested Directors, may authorize the indemnification upon the opinion, in writing, of the independent legal counsel designated by such majority of disinterested Directors that the acts of the Director or Officer material to the cause of action were not committed in bad faith or as a result of active or deliberate dishonesty, and that the Director or Officer did not personally gain, in fact, a financial profit or other advantage to which he or she was not legally entitled.

14

2.     No indemnification shall be made in any case where a final judgment or other final adjudication adverse to the Director or Officer affirmatively rules that the Director's or Officer's acts were committed in bad faith or were the results of active and deliberate dishonesty and were material to the cause of action so adjudicated, or that the Officer or Director personally gained, in fact, a financial profit or other advantage to which he or she was not entitled.

3.     If the proceeding is settled with court approval or if the proceeding resulted in a judgment or other final adjudication, no indemnification shall be provided if the indemnification would be inconsistent with any condition with respect to indemnification expressly imposed by the court in approving the settlement or imposed by the final judgment or other final determination.

4.     The Association shall, prior to the resolution of any claim or claims against an Officer or Director, provide the Officer or Director with an advance payment of legal and other expenses incurred or to be incurred in defending any civil or criminal proceeding relating to acts or decisions made by the Officer or Director in the performance of his or her duties as an Officer or Director of the Association. All such expenditures incurred in defending a civil or criminal action or proceeding which are advanced by the Association must be repaid by the Officer or Director if the Officer or Director is subsequently found not to be entitled to indemnification under the provisions relating to indemnification set forth above.

5.     If the Officer or Director is entitled to indemnification, but such expenses so advanced exceed the amount to which the Officer or Director is entitled, the Officer or Director shall repay such expenses to the extent of the amount advanced exceeds the amount of indemnification to which the Officer or Director is entitled.

15

## Article XIV

### Legal Representation of Members

1.      All members of the Association shall be entitled to legal representation relating to any disciplinary hearing, or in relation to any alleged violation of the rules or regulations of their employer, with the approval of the Board of Directors.  Upon such approval, the member shall be provided with legal representation by the Association, or the member may retain his own legal representation who will accept the hourly rate of compensation as set by the Board of Directors.  The Association will not be responsible for any fees in addition to the hourly rate as set by the Board of Directors.  Any legal representative retained by a member must account for, on a monthly basis, all hours expended, to the Financial Secretary.  The Board of Directors, upon review of any member's legal fees expenditure, may revoke their authorization for the member to retain their own legal representation and provide the Association's legal representation.

2.      A member who is the subject of a criminal investigation may be entitled to legal representation, upon the approval of the Board of Directors, until that member is arrested or indicted.  The member may accept the Association's legal representation or retain his or her own representation under the same constraints as set forth in Section 1 of this Article.  Association funds may not be expended for legal representation of a member after his or her arrest or indictment.

## Article XV

### Miscellaneous Provisions

1.      Authorization Necessary to Represent Association.  Except to the extent specified in this Constitution and By-Laws, no Officer or Director of the Association shall have the power to act as agent for or otherwise bind the Association in any way whatsoever.  No member or group of members or other person or persons shall have the power to act on behalf of or otherwise bind the Association except to the extent specifically authorized in writing by the President of the Association or by the Executive Board of the Association.

16

2. <u>Rules of Order.</u> Robert's Rules of Order, Revised, shall be the guide in all cases to which they are applicable and in which they are not inconsistent with this Constitution and By-Laws and special rules of this Association.

### Article XVI

### Amendment

This Constitution and By-Laws may be amended, revised, or otherwise changed by a majority vote of the members voting on such proposed change. Proposed amendments to this Constitution and By-Laws may be introduced by a member or members at a regular meeting of the Association. The proposed amendment will then be reviewed and commented upon by the Executive Board at the next regular or special meeting of the Association. After the Executive Board's review and comment, a vote will be taken among the members present at the meeting to determine whether the proposed amendment should be mailed out for a vote by the entire membership. If a majority of the members present at the meeting so determines the proposed amendment shall be mailed out to all Association members for mail ballot on the proposed amendment. If the majority of mail ballots returned to the Association are in favor of the proposed amendment, the amendment shall take effect immediately thereafter.

# COMPLAINT EXHIBIT TWO:

## LEEBA BYLAWS AND CONSTITUTION FILED IN AUGUST,2014 WITH U.S. DEPARTMENT OF LABOR CLAIMING THE WERE ADOPTED IN 2005 BUT AMENDED JANUARY 21, 2011

277 Main Street
Suite1
Catskill, NY 12414
Phone: (518)
943-5065
Fax: (866) 554-9326

18 North7th Street
Stroudsburg, PA 18360
Phone:(570) 872-9150
Fax: (866) 554-9326



LAW ENFORCEMENT EMPLOYEES BENEVOLENT ASSOCIATION

## Constitution and By-Laws

## of the

## Law Enforcement Employees Benevolent Association

## Preamble

The organization known as the *Law Enforcement Employees Benevolent Association* is formed for private and public sector law enforcement employees in order to provide an employee association dedicated to protecting and preserving their interests and welfare, improving their working conditions, establishing and administering collective bargaining agreements with their employers and guaranteeing the individual rights and legal protections of each member.

## Article I

## Name

The name of this organization shall be the **Law Enforcement Employees Benevolent Association** herein referred to as **L.E.E.B.A.**

## Article

## Purpose

The objectives of this Association shall be as follows:

a. To unite within the association all members employed in the law enforcement professions for membership regardless of religion, race, creed, color, national origin, age, physical disability, sexual orientation or sex:

b. to promote the interests of the law enforcement profession and to safeguard the rights, individually and collectively, of the members:

c. to improve the wages, hours and conditions of work, protect members rights, better the working and living conditions of its members.

d. To establish and maintain collective bargaining agreements with the employer for the purpose of representing members and in making and maintaining employment relationship and agreements

covering discipline, benefits, rates of pay, rules and working conditions for the members of the Association, and to settle promptly disputes and grievances which may arise between such members and their employers;

**e.**   To establish fair and equitable means of disciplining members by their respective employer;

**f.**   To establish fair rates of compensation, benefits, maximum hours of employment, uniform principles of seniority and fair treatment of members of the Association and to seek the adoption and perpetuation thereof;

**g.**   To urge, support and sponsor the passage of legislation, regulations, rules and laws affecting members of the Association which will improve, protect and increase the safety, health and welfare of the members;

**h.**   To make provisions for suitable pension, annuity, retirement, disability, benefits for all members of the Association through negotiations with employers, legislation, collective bargaining and other means;

**i.**   To provide proper representation for all members in enforcement of agreements, enforcement of rights, promotions of the best interests of all members collectively and individually.

**j.**   To receive, manage, invest, expend or otherwise use the funds and property of this organization to carry out the duties and to achieve the objectives set forth in these By-laws and Constitution and for such additional purposes and objects not inconsistent therewith as will further the interests of this organization and its members, directly or indirectly.

**k.**   It is recognized that the problems with which this labor organization is accustomed to del cannot be resolved in isolation but require achievement of a broad spectrum of economic and social objectives as set forth above and as the Association may determine and assert that participation of this lbor organization, individually and attainment of the objectives set forth herein are for the benefits of the organization and its members.

<br>

## Article III

### Membership and Dues

1.   Eligibility:   Any person over the age of 18 and of good moral character who is actively employed or retired from a law enforcement profession shall be eligible membership in the Association. Each member shall receive a membership certificate. The membership certificate shall contain the name of the member, the class of membership, the period of validity, and such additional information as may be deemed necessary. The membership certificate shall be signed by the President or the Recording Secretary and bear the seal of the Association.

2.   Class of Membership:   There shall be three (2) classes of membership: (i) full membership; Associate Membership;

3.   Description of Membership Classes:   (i) FULL -- any full or part-time member of a public or private law enforcement entity for whom the Association is the recognized employee bargaining representative. Full members shall have voting rights pertaining to decertification processes available under respective jurisdiction and all bargaining agreements.   (ii) ASSOCIATE – any full or part-time member of a public or private law enforcement entity for whom the Association is not the recognized employee bargaining representative. Associate members shall not have any voting rights in the Association but they will be entitled to participate, at their own expense, in Association sponsored health, dental, and vision plans.

4.   Application:   an application for membership shall be on a standard form provided for that purpose by the Recording Secretary. Each applicant by accepting membership in the Association agrees and subscribes without reservation to all provisions, conditions and stipulations in the Constitution and By-laws currently in effect or as they may be added to or amended.

5.   Membership Period:   The membership period for full members shall run from the January 1 to December 31 of each calendar year and shall automatically be renewed each year as long as the Association remains the bargaining representative for said class or group of members. The membership period for Associate Members shall run from the date of receipt of said membership application until one year later. Associate Members will be sent a renewal notice two months prior to expiration of the one-year membership. Associate Members will be renewed upon the receipt and full payment of yearly dues, All membership lists which shall include the type and term of membership will be maintained by the Recording Secretary,

6.   Termination of Membership:   A full Membership shall be terminated by a discharge from active law enforcement employment resulting from malfeasance or by voluntary resignation of the member's position within law enforcement. An Associate Membership shall be terminated by expulsion when a member remains three (3) months in arrears for membership dues. Any member convicted of a felony will be terminated form membership in the Association.

7.   Reinstatement of Membership:   Any member who has been terminated from membership for non-payment of dues or who has voluntary resigned may submit an application for membership to the Association. The application of a terminated member will be reviewed by the Recording Secretary and Financial Secretary who upon consent by the Association President may reinstate the member provided that all unpaid past dues are paid and the new membership is paid in full for the year.

8.   Dues:   Full Members dues shall be paid of gross monthly income at the rate of 2 ½ percent of said income or under certain circumstances has deemed by the Executive Board upon approval of the members. Full Members shall also pay an initiation fee of   $100.00. Associate Members dues shall be paid monthly at the rate of $50.00 for a yearly rate $600.00. Associate Members shall also pay an initiation fee of $50.00.

Article IV

Meetings/ Special Meetings

1. General membership meetings of the Association shall be held at a time and place determined by the Association Executive Board.

2. The Association Executive Board is authorized to permit membership meetings to be held so as to permit the membership to attend meetings and to express their views and otherwise exercise their rights as members.

3. Special meetings, the President may, on his/her own motion call a special meeting. Reasonable notice of the date, time and place of any special meeting, and of the questions to be presented shall be given the membership.

4. Special meetings, twenty percent (20%) of the members in good standing of the Association may submit a written petition for a special meeting of the Association to the President of the Association, setting forth the reasons therefor, and the President shall call the meeting within a reasonable time.

5. Such special meetings shall not be considered a substitute for the regular meetings determined by the Associations Executive Board.

6. The Quorum of a general or special membership meeting shall be twenty (20).

    A) Conduct:

7. Members in attendance at membership meetings shall have the rights to express their views, or opinions upon any business and the rules and regulations adopted by the Association Executive Board pertaining to the conduct of meetings, but no member in exercising such rights shall evade or avoid his/her responsibility to the organization as an institution or engage in or instigate any conduct which would interfere with the Association's performance of its legal or contractual obligations.

8. If it should appear to the Presiding Chairman that any member is conducting himself/herself so as to constitute a threat to the orderly conduct of the business of the meeting, he/she may order him/her ejected.

9. Members thought to be conspiring or in collusion to bring harm or cause any disruption to the regular operations of the Association, or any of its board members, staff, or fellow members shall be subject to an investigation and discipline by the Executive Board. Discipline may consist of suspension and or explusion from the Association. The member shall be entitled to the representation of their own expense, if found that a hearing be required to ascertain the guilt of said member or members. An executive board hearing decision may be appealed to the executive board (10) business days after it has been rendered, and only in writing by certified mail postmarked no later than the 7th business day from when the decision was made.

(b) trials and charges:

10. Trial. Every member charged with a violation of these By-laws shall be accorded a full and fair hearing as required by law. No member of the Association Executive Board having a personal interest is adverse to that of the charging party or the accused shall sit on the trial board. The decision on disqualification under this provision, if raised by an interested party, shall be made in the first instance by majority vote of the Association Executive Board, whose decision shall be appealable as part of the case, in accordance with the appeal procedure of this section.

11. Charges. Charges shall be in writing and signed by those filing same and must be filed in duplicate with the Recording-Secretary of the body, which is to hear the charges, who shall serve the charges and notice of the hearing upon the accused either in person or by mail at least (10) days prior to the hearing. No hearing on any appeal shall be held less than ten (10) days from the date on which notice of the hearing has been served on the parties unless all parties agree to waive this requirement. In scheduling the time and place of the hearing, due consideration shall be given to the convenience of the accused and witnesses necessary in the case. The charges must set forth the provisions of these By-laws allegedly violated and the acts which allegedly constitute such violation in sufficient detail to inform the accused of the offense charged, including, where possible, date, and places. If charges are filed, the charging party must include in the charges all alleged offenses of which he has knowledge, or in the exercise of due diligence should have had knowledge, as of the time of the filing of the charge. He/she may not subsequently file additional charges based upon facts of which he/she had knowledge as of the time of the filing of the charges. Any charge based upon alleged misconduct which occurred more than two (2) years prior to the filing of such charges is barred and shall be rejected by the Recording –Secretary except charges based upon the non-payment of dues, assessments and other financial obligations. No member or officer shall be required to stand trial on charges involving the same facts as to which he is facing criminal or civil trial until his final court appeal has been concluded. Nor shall a member or officer be required to stand trial on charges that are substantially the same as arise under the same circumstances as prior internal Association charges against such member or officer.

12. Rights of the Accused. Throughout the proceedings, there shall be a presumption of innocence in favor of the accused. In order to be sustained, the charges must be supported by a preponderance of reliable evidence and a majority of the members of the panel must vote to find the charged party guilty. The accused shall have the right to present his own evidence, rebut testimony against him, present witnesses favorable to him and cross-examine adverse witnesses. The charging party, the accused and the Association Executive Board may select only a member in good standing of the Association to represent them at a hearing conducted before any trial or appellate body. Witnesses need not be members of the Association. The hearings shall be open to other members, subject to the discretion of the Association Executive Board in maintaining order and in excluding witnesses except when testifying.

13. Action by the Association Executive Board. The Association shall have the authority to determine the manner of reporting the hearings and shall have the authority to exclude any method not authorized by it. Any request by a party that a verbatim record be made must be honored by the Executive Board. If the Association Executive board decides to have transcript or recording of the hearing made, the Association Executive board shall furnish a copy of the same to the accused and to other interested parties upon payment of the cost for same, or shall make such copy available to any interested party for copying or consultation without cost.

14. Within a reasonable time after completion of the hearing, the Association shall decide the case. The decision shall be in writing and contain the charges, its own factual findings and decision, and a notice to the parties informing them   of the proper body to which they may appeal,(Board of Directors) and the time within which they may appeal, and the time within which the appeal must be filed. A copy of the decision of the Executive Board must be forwarded to the parties without delay. A copy of documents in the proceedings shall be kept available at the Association's principal office until final disposition is made of these charges

## Article V

## Board of Directors

1.  The affairs of the Association shall be managed and its' funds and properties shall be controlled by the Board of Directors. The powers of the Board of Directors shall include, but not be limited to the following:

    a)  to admit, suspend, or expel members;

    b)  to audit bills;

    c)  to employ, set salaries for, and discharge employees of the Association

    d)  to negotiate collective bargaining contracts.

2.  The Board of Directors shall be comprised of the President, 1st Vice-president, 2nd Vice-president, Recording Secretary, Financial Secretary, Sergeant at Arms/Membership Coordinator and one delegate from each employment group (certified bargaining certificate) represented in collective bargaining agreements by the Association.

3.  Each delegate Director shall hold office for a term of 5 years. An election to fill the office of delegate Director shall be in accordance with rules established by the Election Committee. A vacancy in the office of Delegate Director shall be filled from the appropriate employment group (certified bargaining certificate) by the Executive Board for a period not to exceed 4 months. A special election in the appropriate employment group for the vacancy in the office of delegate Director shall be held within (3) months the vacancy occurs. It shall be the duty of the Board of Directors to immediately notify the members of the affected employment group of the vacancy upon the resignation of a delegate Director, or acquisition of a new employment group (certified bargaining certificate). Each delegate Director may designate an alternative delegate Director from his/her employment group to assist with the performance of duties.

4    Regular meetings of the Board of Directors shall be held quarterly at a time and place to be fixed by the Board of Directors.

5   Notice of the time and place of the quarterly meetings of the Association shall be mailed to each Director at his/her address as it appears in the records of the Association. Such notices shall be given not less than ten (10) days or more than thirty (30) days before the meeting. Special meetings of the Board of Directors may be called by the Executive Board at its discretion. The President may call a Special Meeting of the Directors upon a request of a majority of the Board of Directors. Notice of a Special meeting of the Board of Directors shall be given by email to each of the Directors not less than two (2) days before the Special Meeting. Special meetings shall be held at a location designated by the Executive Board.

6.   A majority of the members of the Board of Directors shall constitute a quorum at any meeting of the Board of Directors, but a number les than a quorum may adjourn such meeting without further notice until a quorum is present.

7.   Any member in good standing who has been a member of his/her employment group (certified bargaining certificate) for at least one (1) year prior to election shall be eligible to hold delegate Director office position.

8   The Election Committee shall consist of five (5) members of the Board of Directors. The Election Committee shall prescribe rules as may be necessary for the election of officers of the Association, the election of members of the Board of Directors.

9   Removal of a Director shall be in accordance with section 706 of the Non-for-profit corporation law. Upon a request of a majority of the members of the association that elected a Director of their employment group (certified bargaining certificate) the Board shall schedule a recall vote for that delegate Director.

10  (i) Each member of the Board of Directors shall be entitled to one (1) vote. The Director shall be entitled to vote on any matter submitted to the Board for action thereon at a meeting of the Board.

(ii) Any action required or permitted to be taken by the Board of Directors may be taken without a meeting if all members of the Board or Committee consent in writing to the resolution authorizing that action. The resolution and the written consent thereto by all members of the Board or Committee.

(iii) Any one or more members of the Board of Directors or of any Committee thereof may participate in a meeting of such Board or Committee by mans of a telephone or email.

(iv) Except as otherwise specifically provided, the vote of the Directors present at the time the vote is taken shall be the actions of the Board of Directors.

Article VI

Executive Board

1. There shall be an Executive Board, which shall consist of a President, 1st Vice-President, 2nd, Vice-President, Recording Secretary, Financial Secretary and Sergeant at Arms/ Membership Coordinator. Subject to the control and general supervision of the Board of Directors, the Executive Board shall have the full power to manage the affairs of the Association, to conduct its business activities, to supervise its daily operation, to invest and re-invest its funds, and generally to supervise and control the operations of the Association.

2. The Executive Board shall meet at the call of the President or of a majority of its members. A report on all actions taken by the Executive Board shall be made to the Association membership at the next following meeting. A majority of the members at the Executive Board shall be required for a quorum.

(A) Expense Allowance:

1. Recognizing that the officers and representatives of this organization do not work regularly scheduled hours and receive no compensation for overtime pay; also recognizing that such individuals are required to pay varying amounts for lodgings and meals depending upon the city to which they travel, which amounts are sometime less, but more often more than the allowances given them; and recognizing that they must participate in cultural, civic, legislature, political, fraternal, educational, charitable, social and other activities in addition to their specific duties as provided in the Constitution and these By-Laws, that such activities benefit the organization and its members and that the time spent in such activities is unpredictable and unascertainable, such officers and representatives may be granted an allowance(both for in-town and out-of-town work, respectively, which in the case of out of-town work shall include hotel and meal expenditures in such amount (daily, weekly or monthly) as the Association Executive Board may determine. Where such an allowance has been granted, there shall be no need to make a daily or other accounting to the Association membership for such allowance.

2. In addition to the allowances set forth above, all officers and employees may be reimbursed for, or have credit provided for all other additional expenses incurred in connection with their activities, provided that such expenses were not covered by an expense allowance and provided further that no officer or employee receives more than one payment for the same expense. The Association shall establish expense allowance guidelines and adopt procedures for regular review of expenses paid under this section.

3. When a representative of the organization is engaged in activities in the interest of or for the benefit of the Association and its members within the scope of his/her authority, the Association shall pay the expenses incurred therein, or reimburse the representative upon receipt of itemized vouchers from his/her or the supplier of such services, provided that the representative does not receive reimbursement or another allowance for these expenses.

4. The Association may provide its officers or representatives with automobiles upon authorization of the Executive Board, or in lieu thereof, there may be paid an allowance for use of their automobiles in such amount or at such rate as shall be approved by the Association. In such instances where the Association provides an automobile, title to the automobile shall remain at all times in the name of Association until such times as the Association decides to dispose of the

vehicle. It is recognized that such officers or employees are required to be on instant call at all times, to garage such automobiles and are responsible for their safe-guarding. Accordingly, for the convenience of the Association, and as partial compensation for such additional responsibilities, such officers shall be permitted personal use of such automobiles when the automobiles are not required for Association business. Upon approval of the Association, the principal Executive Officer is empowered to sell, exchange or lease automobiles or arrange financing therefor on behalf of the Association.

5.  The Association may from time to time provide the terms and conditions of employment for officers, employees and representatives of this association including, but not limited to, such fringe benefits as vacations with pay, holidays, sick leave, time off for personal leave, and in connection there-with, any disability or sickness, health and welfare retirement benefits and activities, and facilities relating thereto, and may form time to time provide changes therein. Any such benefit when approved by the Association Executive Board shall be specifically set forth in the minutes of the Executive Board meetings. The Principal executive Officer is authorized to make to any Association officer or employee advances on his/her salary and/or vacation pay within the restrictions of applicable la. In no event may any officer or employee reacquire accrued vacation time once an officer or employee has received a cash payment in lieu or on account of such accrued time.

6.  It is the stated policy of this Association that vacation leave should be utilized in the year in which it is earned, However, in the event that this is not possible, an officer or employee may elect to receive his or her pay for up to two weeks of unused vacation in a single year, up to a lifetime maximum of six weeks of accrued and unused vacation.

7.  Except as set forth above, and subject to outstanding obligations and existing collective bargaining agreements, no officer or employee may receive a cash payment in lieu of vacation. If a cash payment as set forth above is made, the rate of pay shall be the rate in effect at the time the vacation was earned.

8.  The Association Executive Board shall establish procedures for recording vacations and monitoring compliance with the vacation provisions of these By-laws.

Article VII

Officers

1. President

   The President shall:

   a)  preside at all meetings of the Association and of the Executive Board.

   b)  be a member of all committees exception election committees.

   c)  Countersign all checks drawn against the general funds of the Association

d) Appoint all standing committees and all special committees of the Association, subject to approval of the Executive Board.

e) Retain a General Counsel subject to approval of the Executive Board.

f) Report periodically to the membership regarding the progress and standing of the Association and regarding the President's official acts.

2. First Vice- President

The First Vice-President shall;

a) assist the President in the work of the President's office.

b) in the absence of the President or in the presidents inability to serve, preside at all meetings and perform all duties otherwise performed by the President.

c) Upon approval by the Association Executive Board, be authorized to act as co-signer of checks drawn on the Association funds in place of either the President or the Financial Secretary.

3. Second Vice-President

The Second Vice-President shall:

a) in the absence of the President or First Vice-President or in the inability to serve at all meetings and perform all duties otherwise performed by them.

b) oversee all fundraising undertaken by the Association.

4. Recording Secretary

The Recording Secretary shall:

a) keep a record of the proceedings of all membership meetings and of all Executive Board meetings.

b) carry on the official correspondence of the Association, except as the Executive Board may direct otherwise.

c) Perform such other duties as the Executive Board may require.

5. Financial Secretary (Treasurer)

The Financial Secretary (Treasurer) shall:

a) receive and receipt all monies, dues, funds and donations of the Association.

b) deposit all money so received in the name of the Association in a bank or banks selected by the Executive Board, and money so deposited shall be withdrawn only by checks signed by the President and the Financial Secretary (Treasurer)

c) prepare and sign checks for such purposes as are required by the constitution or are authorized by the membership or the Executive Board

d) keep an accurate record of receipts and disbursement and shall, once every year in January, submit to the membership an operating statement of the financial transactions of the Association for the previous year.

e) Act as custodian for all properties of the Association.

6. Sergeant at Arms / Membership Coordinator

Sgt. at Arms/Membership Coordinator shall:

a) Control all meetings and special meetings involving members and the Executive Board and Board of Directors.

b) Coordinate all Membership drives and elections involving new membership applications and employment group certifications.

c) Responsible for the growth and stability of all current and new members within the Association.

d) Sgt. at Arms shall have the power to facilitate, oversee, certify and determine the validity of all Board of Directors, Trustees and Delegates.

(a) Nominations and Elections of Officers: Rules:

1. Meetings hereinafter established for nominations of Delegate Director and Trustee shall be held in September, subject to the provisions of these by-laws. Election shall be held not less than thirty days after the nominations have been closed. This Association shall elect its Delegate Director and Trustee office by secret mail referendum ballot for a term of five years. The Association Executive Board shall have the authority to establish all rules and regulations for the conduct of the election.

2. At least twenty days (20) prior to the date of the nomination meeting, the Recording Secretary shall give specific notice of the date, time and place of the nomination meeting and the offices to be filled (Delegate Director and Trustee for each employment group).

   (b) Eligibility of Members:

1. Every member whose dues are paid up through the month in which is prior to the month in which nominations or elections is held shall have the right to nominate, vote, or otherwise support the candidate of his/her choice.

2. to be eligible for election to office in this Association, a member must be in continuous good standings in this Association and actively employed for a period twenty-four (24) months.

3. Payment of dues after their due date shall not restore good standing status for such month or months in computing the continuous twenty-four (24) months good standing status required by this section as a condition of eligibility for office.

4. In addition to those conditions of eligibility listed in subsection (B) above, a member must have attended at least fifty percent (50%) of the regular meetings of this Association during the Twenty–four (24) months consecutive months prior to nomination in order to be eligible.

   (c) Procedures

1. Nominations shall be made at a general or special membership meeting or at a meeting of each employment group by the Association. If the nominations are held at a separate employment group meeting, the members may nominate candidates from their own group of employment for election to association office.

2. A member otherwise eligible to run for office shall become a bona fide candidate only upon his/her nomination for office and acceptance of the nomination. Nominations shall be made at the meeting by a member in good standing other than the nominee. Nomination may be submitted by mail petition received by the Recording Secretary no later than the day before the nomination meeting. Every member eligible to nominate candidates shall be entitled to nominate or second the nomination of one (1) candidate, but only one (1) for each office open. Prospective candidates may not nominate themselves nor second their own nomination. Nomination shall not be closed until a call for further nominations has been made three (3) times by the Chair without further nominations being made.

3. In the event only one (1) candidate is nominated for any office, no election shall be conducted for such office unless required by law and such unopposed candidate shall be declared elected by acclamation at the nominations meeting, effective as of the conclusion of the term of the incumbent.

4. Candidates must except nominations at the time made either in person, or if absent, in writing and may accept nomination for only one office.

5. The Recording Secretary shall review the eligibility to hold office of any member at such members request and shall make a report on the eligibility of that member within five (5) business days therafter to any interested member

(D) Elections

1. The election shall be conducted by mail referendum balloting. Ballots shall be mailed to all active members within their employment group and shall be returned to a secure post office box no earlier than thirty (30) days after the nomination meeting. The Executive Board shall retain a neutral agency to supervise the distribution, collection and tabulation of the ballots. Candidates shall have the right to have their observers present at all phases of the ballot processing procedure.

2. Absentee voting by mail shall be permitted only upon application of members who are ill, or absent from city, town or where they are normally employed at the time of voting, because of vacation or an employment tour of duty. The Association may permit additional reasons for absentee balloting if they so desire. Applications for absentee shall be prior to the date set for election and shall contain the grounds therefor. Absentee ballots shall be valid only if they are received by noon of the day on which the polls close. Absentee voting shall be conducted with all proper safeguards for secrecy of the ballot.

3. The candidate for each office who receives a plurality of the votes cast for the office shall be elected thereto. In the event of a tie vote the candidates shall resolve such tie by reelection between only the candidates who have tied for the highest number of votes.

4. No officer may run for another office in this Association, the term of which covers part of his/her current term, unless he/she resigns from his/her current office at the time of nominations. Such resignation to be effective upon installation of his/her successor. He/she shall announce his/her intention to resign not later than thirty (30) days prior to the nomination meeting and will not be eligible for appointment to the vacancy created by his/her resignation. No officer may hold another office in any other Association (other than a trusted Association) during his/her term except by authorization of the Association.

5. There shall be no-write in candidates and any ballot containing a write-in candidate shall be void insofar as the vote for that office is concerned.

6. All elections and nominations involving election of delegates will be followed by Article VII section (a)

## Article VIII

## Trustees

The trustees shall annually review the finances of the Association, including the finances concerning any health and welfare, pension, annuity, insurance or other benefit program covering members of such Association, and shall report to the membership on the results of such audit. The trustees shall be members of the Finance committee.

Employment group trustees shall be elected from the general membership for a two- year term. The total number of trustees shall be determined by the number of employment groups within the Association. Each employment group shall elect a member to serve as their trustee and representative on the Finance committee

## Article IX

## Contracts and Liabilities

No officer (except the President and First Vice-President), Executive Board Member, person holding an elected or appointive position, organizer, employee, representative, or agent of the Association or of a subordinate organization shall make or be empowered to make any contract or incur any liability or act for the Association or represent, comment, or bind the Association or receive legal process on its behalf binding on the Association, unless authorized in writing by the Executive Board. The Association shall not be liable under any contract or for any acts of such organization or any such person, unless authorized in writing by the Executive Board, by the President, or by the First Vice-President acting in place of the President, or for any conduct or act by any of them that violates this constitution and by-laws.

## Article X

## Legal Counsel and Litigation

The President, by and with consent of the Executive Board, may employ counsel to advance the aims and welfare of the Association. Compensation for such counsel shall be fixed by the President, subject to the approval of the Executive Board, on a reasonable basis commensurate with the service to be rendered.

## Article XI

## Approval of Contracts

Any collective bargaining contracts which are negotiated on behalf of the members of the Association, shall be ratified by the members covered by such contracts. The Association will not enter into any contract which has not been approved by the members of the Association at a contract vote.

Article XII

Agency Shop

The Association shall elect to have deducted from the wage or salary of the employees who are not members of the Association the amount equivalent to the membership dues pursuant to Article III of this Constitution and by-laws.

Article XIII

Annual Budget

No later than November meeting of the Executive Board, the Financial Secretary will present a budget for the approval of the full Board of Directors for the fiscal year which will be from the following January 1st through December 31st. The budget shall be approved by the finance committee before presentation to the Board of Directors. The budget shall contain at least the following items: (a) projected income from all sources; (b) projected costs in all areas and programs; (c) a list of all assets of the Association; (d) a list of all liabilities of the Association.

Article XIV

Indemnification for Directors and Officers

1. The Association shall provide indemnification for Directors and Officers in civil or criminal proceedings, subject to the provisions of paragraph (2) and (3) below, relating to acts or decisions made by the Director or Officer in the performance of his or her duties as an Officer or Director of the Association under the following circumstances:

(a) if the proceeding results in a judgment or other final adjudication and the Director or Officer is successful in defending the claim or claims, whether on the merits or otherwise, indemnification will be provided for the amount of legal and other expenses incurred by the Director or Officer in defending such claim or claims: or

(b) if the proceeding is settled or otherwise disposed of without a final judgment or other final adjudication, or if the proceeding results in a judgment or other final adjudication adverse to the Director or Officer. Indemnification for the amount of the settlement, judgment, or other disposition, including legal and other expenses in connection therewith, shall be made in the specific upon a vote of the majority of the members of the Board of Directors who were not parties to the proceedings, that acts of the Director or officer material to the cause of action were not committed in bad faith or as a result of active or deliberate dishonesty, and that the Director or Officer did not personally gain, in fact, a financial profit or other advantage to which he or she was not legally entitled. In the alternate, a majority of disinterested Directors may direct (even if they do not constitute a majority of the Board of Directors) that the Board of Directors, with participation of the interested Directors, may authorize the indemnification upon the opinion, in writing, of the independent legal counsel designated by such majority of disinterested Directors that acts of the Director of Officer material to the cause of action were not committed in bad faith or as a result of active or deliberate dishonesty, and that the Director of Officer did not personally gain, in fact, a financial profit or other advantage to which he or she was not legally entitled.

3. No indemnification shall be made in any case where a final judgment or other final adjudication adverse to the Director of Officer affirmatively rules that the Director's or Officer's acts were committed in bad faith or were results of active and deliberate dishonesty and were material to the cause of action so adjudicated, or that the Officer or Director personally gained, in fact a financial profit or other advantage to which he or she was entitled.

4. If the proceeding is settled with court approval or if the proceedings resulted in a judgment or other final adjudication, no indemnification shall be provided if the indemnification would be inconsistent with any condition with respect to indemnification expressly imposed by the court in approving the settlement or imposed by the final judgment or other final determination.

5. The Association shall, prior to the resolution of any claim or claims against an Officer or Director, provide the Officer or Director with an advance payment of legal and other expenses incurred or to be incurred in defending any civil or criminal proceeding relating to acts or decisions made by the Officer or Director in the performance of his or her duties as an Officer or Director of the Association. All such expenditures incurred in defending a civil or criminal action or proceeding which are advanced by the Association must be repaid by the Officer or Director if the Officer or Director is subsequently found not to be entitled to indemnification under the provisions relating to indemnification set forth above.

6. If the Officer or Director is entitled to indemnification, but such expenses so advanced exceed the amount to which the officer or Director is entitled, the Officer or Director shall repay such expenses to the extent of the amount advanced exceeds the amount of indemnification to which the Officer or Director is entitled.

## Article XV

### Legal representation of Members

1. All members of the Association shall be entitled to legal representation relating to any disciplinary hearing, or in relation to any alleged violation of the rules and regulations of their employer, with the approval of the Board of Directors. Upon such approval, the member shall be provided with legal representation by the Association, or the member may retain his own legal representation who will accept the hourly rate of compensation as set by the Board of Directors. The Association will not be responsible for any fees in addition to the hourly rate as set by the Board of Directors. Any legal representative retained by a member must account for, on a monthly basis, all hours expended, to the Financial Secretary. The Board of Directors, upon review of any member's legal fees expenditure, may revoke their authorization for the member to retain their own legal representation and provide the Association's legal representation.

2. A member who is the subject of a criminal investigation may be entitled to legal representation, upon the approval of the Board of Directors, until that member is arrested or indicted. The member may accept the Association's legal representation or retain his or own representation under the same constraints as set forth in Section 1 of this Article. Association funds may not be expended for legal representation of a member after his or her arrest or indictment.

3. Any member arrested or indicted for any criminal offense not related to their scope of employment will not be indemnified.

## Article XVI
### Miscellaneous Provision

1. Authorization Necessary to Represent Association. Except to the extent specified in this Constitution and by-laws, no Officer or Director of the Association shall have the power to act as agent for otherwise bind the Association in any way whatsoever. No member or group of members or other person or persons shall have the power to act on behalf of or otherwise bind the Association or by the Executive Board of the Association.

2. Rules of Order Robert's Rules of Order, Revised, shall be the guide in all cases to which they are applicable and in which they are not inconsistent with this Constitution and By-Laws and special rules of this Association.

## Article XVII

### Amendment

This Constitution and By-Laws may be amended, revised, or otherwise changed by a majority vote of the Executive Board members and Board of Directors voting on such proposed change. Proposed amendments to this Constitution and BY-Laws may be introduced by a member or members at a regular meeting of the Association. The proposed amendment will then be reviewed and commented upon   by the Executive Board at the next regular or special meeting of the Association. After the Executive Board's review and comment, a vote will be taken among the Executive Board members present at the meeting to determine whether the proposed amendment will be adopted. If the proposed amendment is adopted the amendment will be added to the By-Laws within thirty days with notice sent out to all members.

Originally adopted 10/05/2005 amended January 21,2011