UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  10/6/2021
```

------------------------------------------------------X
                                              :

MARSHALL VANDERMARK, et al.,      :
                                              :

                     Plaintiffs,   :       15-CV-0483 (VSB)
                                              :

       - against -          :      **OPINION & ORDER**
                                            :

LAW ENFORCEMENT EMPLOYEES      :
BENEVOLENT ASSOCIATION, (LEEBA),  :
et al.,                                 :

                     Defendants.  :
------------------------------------------------------X

Appearances:

Rudy Artin Dermesropian
RUDY A. DERMESROPIAN, LLC
New York, NY
*Counsel for Plaintiffs*

Joseph Frank Buono
The Law Office of Joseph F. Buono PLLC
Fishkill, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiffs Marshall Vandermark, ("Vandermark"), Robert Mateer ("Mateer"), and

Thomas Terminelle, ("Terminelle"), (collectively, "Plaintiffs") bring this action against the Law

Enforcement Employees Benevolent Association ("LEEBA") and Kenneth Wynder ("Wynder"),

former president of LEEBA, (collectively, "Defendants") asserting a violation of Title II of the

Labor-Management Reporting and Disclosure Act ("LMRDA") which concerns the duty of labor

organizations to file certain reports with the Secretary of Labor ("Secretary"), provide reports to

union members, and allows union members to sue to examine books, records, and accounts to

verify these reports.  *See* 29 U.S.C. § 431.  Plaintiffs also bring claims pursuant to New York Labor Law §§ 720, 726 and seek attorney's fees.

Currently before me is Defendants' motion for summary judgment.  Because I find that (1) Plaintiffs failed to establish that they are currently LEEBA members, and (2) the right to sue provision of Title II applies only to LEEBA members, Plaintiffs' Title II claim is moot, and I lack subject matter jurisdiction to adjudicate the claim.  I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Accordingly, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' claims are dismissed.

## I.   **Factual Background**[1]

### A.   *Claims and Relief Sought*

Pursuant to Title II of the LMRDA, Plaintiffs seek to "enforce the duty imposed by law upon Defendants to permit Plaintiffs, who have just cause, to examine and copy relevant books, records, and accounts necessary to verify the union's receipts and expenditures from 2005 to the present."  (SAC ¶ 17.)  Plaintiffs seek an order directing Defendants to produce all of LEEBA's financial disclosures and books and records from 2005 to the present, and an order granting Plaintiffs access to all of Defendants' books and records since 2005 to the present.  (*Id.* ¶ 189(E)–(F).  Plaintiffs also seek attorney's fees and costs.  (*Id.* ¶ 189(M).)  Plaintiffs style their Title II claim as one for declaratory judgment and injunctive relief.  (*See id.* ¶¶ 148–58.)  Additionally, Plaintiffs bring claims pursuant to New York Labor Law Sections 720 *et. seq.* and 726 *et. seq.*  (*Id.* ¶¶ 159–72, 179–85.)

---

[1] The factual background is drawn from Defendants' Local Rule 56.1 Statement ("Defs.' 56.1", Doc. 85), Plaintiffs' Response and Counterstatement ("Pls.' 56.1 Resp.", Doc. 90), and Defendants' Reply to Plaintiffs' Counterstatement ("Defs.' 56.1 Reply", Doc. 94); the parties' declarations and exhibits; and Plaintiffs' second amended complaint ("SAC", Doc. 17).  Unless otherwise noted, the facts are undisputed.  References to the allegations in the SAC should not be construed as a finding of their veracity.

### B.      *LEEBA and Plaintiffs*

LEEBA is a labor organization that is composed of both public and private law enforcement personnel.  (SAC ¶¶ 33–35.)   LEEBA represents approximately 190 Environmental Police Officers ("EPOs"), and was certified by the City of New York on October 20, 2005 to represent EPOs in collective bargaining.  (*Id.* ¶ 39.)

Plaintiffs are current or former EPOs.  (*Id.* ¶ 6.) Vandermark retired from the New York City Department of Environmental Protection in 2015.  (Defs.' 56.1 ¶ 15.)  According to the SAC, Vandermark, "at all relevant times herein, was a member and delegate of LEEBA within the meaning of the LMRDA."  (SAC ¶ 29.)  Vandermark has not paid dues to LEEBA since his retirement.  (Defs.' 56.1 ¶ 16.)

At the time of the SAC, Terminelle was a member of LEEBA.  (SAC ¶ 31.) Subsequently, Terminelle signed a letter, dated August 21, 2018, that was addressed to LEEBA and stated, "I write to notify you that I do not want to be a member of the union that represents my position.  If your records indicate that I am a union member, I hereby resign my membership in the union and all of its affiliates effective immediately."  (Defs.' 56.1 ¶ 19; Buono Decl. Ex. F.)[2]  It also stated that "[t]he United States Supreme Court has ruled that I cannot be compelled to pay any union dues or fees as a condition of my employment" and revoked any dues deduction authorization.  (Buono Decl. Ex. F.)  The last paragraph stated as follows: "If you refuse to accept this letter as a resignation of union membership or revocation of dues deduction authorization, please inform me promptly in writing, of your reasons for doing so."  (*Id.*) Terminelle has not paid dues since prior to the August 21, 2018 letter, and his dues deductions

---

[2] "Buono Decl." refers to the declaration of Joseph F. Buono in support of Defendants' motion for summary judgment, filed on April 19, 2019.  (Doc. 82.)

stopped after this letter.  (Buono Decl. Ex. B, at 27:14-16, 28:7-10.)

At the time of the SAC, Mateer was a member of LEEBA.  (SAC. ¶ 30.)  On December 19, 2018, Mateer sent a letter to LEEBA by email, (Defs.' 56.1 ¶ 20), with the subject line "Request to stop union dues deduction.", (Buono Decl. Ex. G).  The letter stated, "I write to notify you that I do not want to be a member of the union that represents my position.  If your records indicate that I am a union member, I hereby resign my membership in the union and all of its affiliates effective immediately."  (*Id.*; Defs.' 56.1 ¶ 22.)  It also stated that "[t]he United States Supreme Court has ruled that I cannot be compelled to pay any union dues or fees as a condition of my employment" and revoked any dues deduction authorization.  (Buono Decl. Ex. G.)  The last paragraph stated as follows:

> If you refuse to accept this letter as a resignation of union membership or revocation of dues deduction authorization, please inform me promptly in writing, of your reasons for doing so.  Please also include anything that I may have signed that supports your decision not to honor my request.

(*Id.*)  At the time of his deposition in March 2019, Mateer was no longer paying dues to LEEBA.  (Buono Decl. Ex. C, at 25:7-9.)  He indicated that dues were last taken out of his paycheck in December.  (*Id.* at 25:10-12.)

## II.   <u>Procedural History</u>

Plaintiffs, proceeding pro se, filed this action on January 22, 2015.  (Doc. 1.)  Plaintiffs filed a first amended complaint on February 24, 2015, and counsel for Plaintiffs filed a notice of appearance that same day.  (Doc. 5–6.)  Pursuant to a stipulation, (Doc. 14), Plaintiffs filed the SAC on June 22, 2015, bringing claims under Titles I, II, IV, and V of the LMRDA, as well as state law claims.  (Doc. 17).  On September 2, 2015, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 27.)  The motion was subsequently briefed.  (Docs. 35–36, 38–39.)

On September 16, 2016, I held a conference and granted Defendants' motions to dismiss in part.  (*See* Doc. 40.)  I dismissed Plaintiffs' claims under Titles I, IV, and V of the LMRDA. (*Id.*)  I denied Defendants' motion to dismiss Plaintiffs' Title II claim, but found that venue was improper in this District because LEEBA maintained its principal office in Catskill, New York.[3] (Doc. 41 (9/16/16 Transcript).)  I therefore directed that Plaintiffs' Title II claim and New York state law claims be transferred to the United States District Court for the Northern District of New York.  (*Id.*; Doc. 40.)  On October 13, 2016, Plaintiffs filed a motion for reconsideration, (Doc. 43), which was fully briefed in November 2016, (*see* Docs. 44–45, 47–49).  In a Memorandum & Order dated April 26, 2017, I granted Plaintiffs' motion with respect to venue because it was undisputed that the Catskills office was no longer LEEBA's principal office, and stated that the case would not be transferred to the Northern District of New York.  (Doc. 50.)

Defendants filed an answer on March 1, 2018, (Doc. 64), and I held a post-discovery conference on October 12, 2018, where I directed the parties to complete discovery by December 12, 2018, and to inform me whether the parties intended to file motions for summary judgment. (Doc. 74).  On March 15, 2019, I approved the parties proposed briefing schedule for summary judgment.  (Doc. 78.)  Defendants filed their motion for summary judgment on April 19, 2019, along with their Rule 56.1 Statement and a declaration that included 21 exhibits.  (Docs. 79, 82–83, 85.)  After granting Plaintiffs' extension request, (Doc. 88), Plaintiffs filed their opposition to Defendants' summary judgment motion, Rule 56.1 Counterstatement, and a declaration with 22 exhibits on June 21, 2019, (Docs. 89–91).  Defendants filed their reply, a reply declaration, and Rule 56.1 Reply to Plaintiffs' Counterstatement on July 12, 2019.  (Docs. 92–94.)

---

[3] Plaintiffs are incorrect in their recitation of what claims survived my ruling on Defendants' motion to dismiss. (*See* Doc. 89, at 1–2.)  Only Plaintiffs' Title II and state law claims remain.

On September 18, 2020, Plaintiffs filed a letter indicating that on September 8, 2020, an indictment was filed against Wynder in this District for wire fraud, conspiracy to defraud the United States, tax evasion for the tax years 2015 until 2018, false statement to Federal Agents, and obstruction of a grand jury investigation.  (Doc. 95.)  As of the date of this Opinion & Order, the criminal case against Wynder is still pending.  *See* 20 Cr. 470 (PKC).

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may

grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "The principles governing admissibility of evidence do not change on a motion for summary judgment" and district courts need only consider admissible evidence in ruling on a motion for summary judgment." *I.M. v. United States*, 362 F. Supp. 3d 161, 174 n.9 (S.D.N.Y. 2019) (quoting *Raskin v. Wyatt Company*, 125 F.3d 55, 66 (2d Cir. 1997)).

In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3); *see also* Fed. R. Civ. P. 56(c)(1)(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."); Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  However, "where the movant 'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is

presented,' for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## IV.   Discussion

Defendants move for summary judgment on numerous grounds, including that Plaintiffs lack standing to bring an action under the LMRDA because none of them are members of LEEBA. I construe Defendants' standing argument to be an argument for lack of subject matter jurisdiction. In resolving this issue, I first consider whether Plaintiffs retain memberships in LEEBA and second whether their claim is moot.

### A.   *Plaintiffs' Memberships in LEEBA*

#### 1.   Applicable Law

The LMRDA defines a member in a labor organization as "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402. "To determine whether an individual is a union member, [the Second Circuit] ha[s] suggested that the focus should be 'on whether a plaintiff has fulfilled the requirements of membership.'" *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Loc. 817*, 741 F.3d 387, 389 (2d Cir. 2014) (quoting *Phelan v. Loc. 305 of United Ass'n*

*of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada,* 973 F.2d 1050, 1057 (2d Cir. 1992) ("We therefore look to whether an individual has satisfied or sought to satisfy the requirements of the union at issue to determine whether he is a 'member' for LMRDA purposes.")).  "That union officials have not performed the ministerial acts necessary to give formal recognition to a person's status as a member is not determinative."  *Id.*

### 2.  Application

Defendants contend that Vandermark, Terminelle, and Mateer are no longer members of LEEBA.  (Defs.' Mot. 8–9.)[4]  Plaintiffs argue that Terminelle and Mateer did not intend to stop being LEEBA members, and Plaintiffs are still members.  (Pls.' Opp. 8–9.)[5]

Terminelle signed a letter, dated August 21, 2018, that was addressed to LEEBA in which he stated, "I write to notify you that I do not want to be a member of the union that represents my position.  If your records indicate that I am a union member, I hereby resign my membership in the union and all of its affiliates effective immediately."  (Defs.' 56.1 ¶ 19; Buono Decl. Ex. F.)  Similarly, on December 19, 2018, Mateer sent a nearly identical email to LEEBA in which he stated, "I hereby resign my membership in the union and all of its affiliates effective immediately."  (Buono Decl. Ex. G.)

In his deposition, Terminelle acknowledged that after this letter, his dues deductions stopped and he never again paid dues to LEEBA, but stated that the letter "comes from" "New York Choice, which is an opt out form" but he "d[id] not recall writing [the letter]."[6]  (Buono

---

[4] "Defs.' Mot." refers to Defendants' motion for summary judgment, filed on April 19, 2019.  (Doc. 83.)

[5] "Pls.' Opp." refers to Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment, filed on June 21, 2019.  (Doc. 89.)

[6] Terminelle appears to be referring to New Choice NY.  "New Choice NY is an independent, nonprofit, nonpartisan effort to educate public employees in New York about their rights, empowering them to seek fair treatment from their unions and giving them a voice in the workplace."  New Choice NY, https://newchoiceny.com/ (last visited Oct. 6, 2021).  Among the rights discussed by New Choice NY, is the choice to opt out of unions and stop paying union dues.  New Choice NY, *Frequently Asked Questions*, https://newchoiceny.com/frequently-asked-questions/

Decl. Ex. B, at 27:14-16, 28:2-10.)  The letter is signed by Terminelle, and includes his address,

phone number, and membership number.  (Buono Decl. Ex. F.)[7]  Mateer admitted in his

deposition that he was no longer paying dues to LEEBA, and that his last dues payment was

sometime in December—the same month as his letter.  (*See* Buono Decl. Ex. C, at 25:7-12.)  He

also admitted that he wrote the letter, and that it stated he resigned his union membership.  (*Id.* at

23:15-16, 25:16-22.)

Plaintiffs argue that these were not resignations but rather Terminelle and Mateer were

opting out of paying dues based on the Supreme Court's decision in *Janus v. AFSCME*, 138 S.

Ct. 2448 (2018).  (Pls.' Opp. 8–9.)  Plaintiffs are correct that the letters stated that the "United

States Supreme Court has ruled that I cannot be compelled to pay any union dues or fees as a

condition of my employment" and stated that dues deductions were no longer authorized.  (*See*

Buono Decl. Exs. F, G.)  Mateer's email subject line was "Request to stop union dues

deduction."  (Buono Decl. Ex. G.)  However, both letters explicitly stated that Terminelle and

Mateer "resign[ed] [their] membership in the union."  (Buono Decl. Exs. F, G.)  At the end of the

letters, Terminelle and Matter stated:  "If you refuse to accept this letter as a resignation of union

membership or revocation of dues deduction authorization, please inform me promptly, in

writing, of your reasons for doing so."  (*Id.*)

Plaintiffs appear to argue that their choice to use a sample form from New Choice NY

negates their explicit request to resign.  (*See* Pls.' Opp. 8.)  New Choice NY's website generates

---

(last visited Oct. 6, 2021).

[7] I observe that unlike Mateer's letter, Terminelle's letter provides no indication that it was sent by email or otherwise to LEEBA.  (*Compare* Buono Ex. F *with* Buono Ex. G.)  I find it persuasive, however, that after the letter, Terminelle's dues deductions stopped, and that this letter was in the parties' possessions.  Based on New Choice NY's website, it appears that there is an automated form a union member can use to "exercise [his] rights to stop paying union dues."  *See* New Choice NY, *Opt Out Today*, https://newchoiceny.com/opt-out-today (last visited Oct. 6, 2021).   It is possible that is how Terminelle generated his letter.

a letter, which anyone can preview, that is almost identical to those submitted by Terminelle and Mateer here.[8]  In the "Know Your Rights" or "Frequently Asked Questions" portion of the website, it makes clear that "You can use this website to tell your employer to stop deducting dues from your paycheck.  You will still have the same pay and benefits negotiated on your behalf in the union contract, but you won't receive certain union services that are reserved for members" and that "[o]pting out of a union means the union may no longer be required to provide certain services to you, such as grievance or disciplinary representation.  People who leave the union usually can't vote on the union contract, vote for union officers or run for office themselves."[9]  Therefore, a union member using the New Choice NY website would be aware based on both the explicit text of the letter, which unequivocally states the intention to resign membership, and a brief review of the "Know Your Rights" section that filing such a letter does more than just stop the payment of dues.[10]

In *Basilicato v. Int'l All. of Theatrical Stage Emp. & Moving Motion Picture Mach. Operators of U.S. & Canada*, 479 F. Supp. 1232, 1244 (D. Conn. 1979), *aff'd sub nom.*, 628 F.2d 1344 (2d Cir. 1980), the court held that even where plaintiffs' withdrawal was not made in accordance with the union's constitution, "under the totality of the circumstances . . . present, the [union] reasonably could assume that the plaintiffs had resigned their membership."  There, plaintiffs sent letters indicating that they had formed an independent union and put their

---

[8] *See* New Choice NY, *Opt Out Today*, https://www.newchoiceny.com/app/uploads/2018/08/STD-NCNY-CYC-LTR.pdf/ (last visited Oct. 6, 2021).

[9] New Choice NY, *Frequently Asked Questions*, https://newchoiceny.com/frequently-asked-questions/ (last visited Oct. 6, 2021).

[10] Additionally, Plaintiffs continued reliance on *Janus* is misplaced.  *Janus* held unconstitutional the collection of fair-share fees, which was the collection of fees from public sector employees who were represented by a union but did not join the union.  138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay.")

correspondence on letterhead that differed from that used by the union.  *Id.* 1244–45.  In its

opinion, the court noted that "[r]esignations generally are construed narrowly in union cases" and

considered *Bradley v. Local 119, International Union of Electrical Radio and Machine Workers*,

236 F. Supp. 724 (E.D. Pa. 1964), which held that plaintiffs had not resigned where plaintiffs

revoked the ability for union dues to automatically be deducted from their paychecks but

continued to pay dues at the union's office.  *Id.* at 1243.  The *Basilicato* court observed that the

*Bradley* court had "relied upon a dictionary definition of 'resign'", meaning that "[u]nless there

is some special meaning to be accorded to it, the word 'resign' is to be given its normal and

customary meaning, 'To give up deliberately:  renounce by a considered or formal act.'"  *Id.*

The 2014 LEEBA Constitution and Bylaws ("Bylaws") do not appear to provide a way

for a member to resign.  (*See* Dermesropian Decl. Ex. 7.)[11]  According to the Bylaws, there are

two classes of membership—full, which is "any full or part-time member of a public or private

law enforcement entity for whom [LEEBA] is the recognized employee bargaining

representation," and associate which applies to any member of a law enforcement entity for

whom LEEBA is not the recognized employee bargaining representative.  (Dermesropian Decl.

Ex. 7, Art. III(3).)  Based on the Complaint, LEEBA was designated the collective bargaining

agent for EPOs, (SAC ¶ 39); therefore, although the parties do not discuss this issue, it appears

that at some point Plaintiffs were full members of LEEBA.  Under the Bylaws, a full

membership is renewed automatically every year as a long as LEEBA remains the bargaining

representative for the member.  (Dermesropian Decl. Ex. 7, Art. III(5).)  "A full Membership

shall be terminated by a discharge from active law enforcement resulting from malfeasance or by

---

[11] "Dermesropian Decl." refers to the declaration of Rudy A. Dermesropian in opposition to Defendants' motion for summary judgment, filed on June 21, 2019.  (Doc. 91.)

voluntary resignation of the member's position within law enforcement." (*Id.* Art. III(6).) Full members' dues are 2.5 % of a member's gross monthly income, and are required to be paid in order to engage in certain activities, including voting in elections. (*Id.* Art. III(8); Art. VII(2)(b).)

Both Terminelle and Mateer's letters explicitly stated that they were "resign[ing]." (*See* Buono Decl. Exs. F, G.) Although Terminelle and Mateer sought to stop the deduction of dues from their paychecks, unlike in *Bradley*, they also sought to resign.[12] Plaintiffs' arguments to the contrary are disingenuous, and are not supported by the record. Plaintiffs argue that Terminelle "retrieved a sample form from New Choice NY, but did not cancel his union membership completely, and he remains a member of LEEBA," and that Mateer "'opted out of paying dues,' but did not cancel his union membership completely, and he remains a member of LEEBA." (Pls.' Opp. 8.) Plaintiffs' citations to Terminelle and Mateer's depositions are misleading. When Terminelle was asked "And you are currently not a member of LEEBA, correct?", he responded, "I just revoked not to pay union dues because I do not believe in their political views." (Buono Decl. Ex. B, at 27:17-22.) Likewise, when Mateer was asked "And you are currently not a member of LEEBA?" he responded only, "I opted out from paying dues." (*Id.* Ex. C, at 25:13-15.) Neither Terminelle nor Mateer directly answered the question, and neither stated that they were still members of LEEBA. Considering the totality of the circumstances

---

[12] I observe that the *Basilicato* court also noted that "the court must be satisfied that a person has acted 'voluntarily' and has in fact resigned his or her union membership." 479 F. Supp. at 1243. The court explained that "on two occasions, the Second Circuit has determined that an employer's promise of a new job should an employee resign from a union during a strike or lockout refutes a 'voluntary' withdrawal by a union member." *Id.* (citing *N.L.R.B. v. Martin A. Gleason, Inc.*, 534 F.2d 466, 476–77 (2d Cir. 1976) *and N.L.R.B. v. Local 50, American Bakery & Confectionery Workers Union*, 339 F.2d 324 (2d Cir. 1974)). Plaintiffs' argument that Terminelle and Mateer only intended to stop paying might be evidence that calls into question whether their resignation was voluntary. However, both drafted and signed letters addressed to LEEBA stating that they intended to resign, and there is nothing to suggest that such an action was not voluntary. Indeed, if Plaintiffs did not intend to resign, they could have revised their letters to make that clear. I am not persuaded by Plaintiff's post hoc justifications.

here, I find that Terminelle and Mateer resigned their LEEBA memberships, and they have failed

to establish that there is a genuine issue for trial.  Both drafted and signed letters addressed to

LEEBA stating explicitly their intent to resign, and the record shows that Mateer's letter was sent

by email to LEEBA.  (Buono Decl. Exs. F, G.)  Since the time of their letters, neither have paid

dues, which are required by the Bylaws and appear to be necessary to be in good standing.  (*See*

Dermesropian Decl. Ex. 7, Art. VII(2)(b)(3)) ("Payment of dues after their due date shall not

restore good standing status for such month . . . .").[13]

Vandermark, the remaining Plaintiff, retired from EPO in 2015, and has not paid dues

since his retirement.  (Defs.' 56.1 ¶¶ 15–16.)  As a retired employee, Vandermark is no longer a

"full or part-time member of a public or private law enforcement entity for whom [LEEBA] is

the recognized employee bargaining representative," such that he meets the criteria in the Bylaws

for full membership in LEEBA.  (Dermesropian Decl. Ex. 7, Art. III(3).)  In addition, the Bylaws

explicitly provide that "[a] full Membership shall be terminated by . . . voluntary resignation of

the member's position within law enforcement," (*see* Dermesropian Decl. Ex. 7, Art. III(6)),

although I note that it is unclear whether voluntary resignation encompasses retirement.  A

retired law enforcement agent is eligible for membership, and membership can be reinstated for a

person who voluntarily resigns, which appears to require that the member seeking to be

reinstated pay all past unpaid dues and pay his dues in full for the year, (*see id.* Art. III(1),(7));

however there is nothing in the record to indicate that Vandermark ever sought reinstatement or

paid up his dues, and there is no evidence that he is still a member.  Vandermark testified that

dues are no longer collected after retirement, (Buono Decl. Ex. A, at 6:14-16), and Vandermark

---

[13] If for some reason Terminelle and Mateer were considered associate members, they would have been expelled
from LEEBA.  (*See* Dermesropian Decl. Ex. 7, Art. III(6) (associate membership terminated by expulsion when
member owes three months of dues.)

did not testify that he remained a member of LEEBA.  Even more tellingly, Plaintiffs in the SAC

refer to Vandermark's membership in the past tense.  (*See* SAC ¶ 29) ("at all relevant times

herein, [Vandermark] *was a member* and delegate of LEEBA within the meaning of the

LMRDA") (emphasis added.)

Given that the evidence demonstrates that (1) Mateer sent a letter resigning from

LEEBA; (2) it can be inferred—and there is no credible evidence to the contrary—that

Terminelle also sent a letter to LEEBA since a copy of the letter was in his or LEEBA's

possession; (3) Vandermark retired; and (4) all three Plaintiffs have stopped paying dues, which

are required for membership, I find that Plaintiffs were not members of LEEBA, and they have

failed to establish that there is a genuine issue for trial.[14]

### B.   *Mootness*

#### a.   Applicable Law

"In order to satisfy the case-or-controversy requirement, a party must, at all stages of the

litigation, have an actual injury which is likely to be redressed by a favorable judicial decision."

*United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006).  Once a case becomes moot, a

federal court no longer has subject-matter jurisdiction over the action, *see Fox v. Bd. of Trs. of

State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir.1994), and the court "must dismiss the case,"

*Blackburn*, 461 F.3d at 261.

---

[14] The Second Circuit has held that a person who is a union "member in substance" can still vindicate his or her rights under the LMRDA.  *John Brady*, 741 F.3d at 389.  Plaintiffs, however, make no such argument, and I do not find Plaintiffs to be "members in substance" given the clear evidence of their intent to resign.  Additionally, Plaintiffs cite to *Shait v. The Millennium Broadway Hotel*, No. 00 CIV. 5584 GEL, 2001 WL 536996, at *7 (S.D.N.Y. May 18, 2001) for the proposition that until Plaintiffs lose their voting privileges and union benefits, they still should be considered LEEBA members.  (Pls.' Opp. 10.)  In *Shait*, the court held that Plaintiffs, who had not paid their dues, did not lack standing to pursue their LMRDA claims because the union "concede[d] that it ha[d] taken no action against the non-dues-paying Plaintiffs, and that they maintain[ed] full voting privileges and continue[d] to receive benefits."  2001 WL 536996 at *7.  Here, however, the issue is not simply Plaintiffs' failure to pay dues; rather, Terminelle and Mateer drafted letters stating they resigned from LEEBA, and Vandermark retired.  Plaintiffs' failure to pay dues only bolsters my finding that Plaintiffs did not intend to be LEEBA members.

"For a federal court to have subject matter jurisdiction over a case, it is not enough that a dispute was very much alive when suit was filed . . . The parties must continue to have a personal stake in the outcome of the lawsuit." *Arline v. Potter*, 404 F. Supp. 2d 521, 529 (S.D.N.Y. 2005) (internal quotation marks omitted).  "[A] plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action," and "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013) (internal quotation marks omitted).  The Supreme Court has "described mootness as 'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Nat'l Res. Def. Council v. Zinke*, No. 18-CV-6903 (AJN), 2020 WL 5766323, at *3 (S.D.N.Y. Sept. 28, 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000)).  Plaintiffs bear the burden of proving jurisdiction.  *Id.*

b. <u>Application</u>

Plaintiffs' Title II claim seeks declaratory judgment "that Defendants file and provide financial disclosures for the years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012 and 2014, as required by LMRDA, 29 U.S.C. 431, and produce and keep accurate record of receipts and disbursements."  (SAC ¶ 157) (*see also id.* ¶ 189(E)–(F)) (seek an order directing Defendants to produce all of LEEBA's financial disclosures and books and records from 2005 to the present, and an order granting Plaintiffs access to all of Defendants' books and records since 2005 to the present.)  Plaintiffs also seek attorney's fees and costs.  (*Id.* ¶ 158.)  Defendants argue that Plaintiffs lack standing to bring a Title II claim because none of them are LEEBA members

(Defs.' Mot. 7–11.)[15]  Plaintiffs respond that all three Plaintiffs were members in good standing at the time of the conduct outlined in the SAC.  (Pls.' Opp. 7.)

Broadly, the "LMRDA was an attempt to increase transparency and protect the rights and interests of union members."  *Bembry v. New York Metro Postal Union*, No. 08 CIV. 2369 (VM), 2009 WL 690245, at *2 (S.D.N.Y. Mar. 12, 2009).  Title II or Section 201 of the LMDRA concerns the duty of labor organizations to (1) adopt constitutions and bylaws, (2) file certain reports with the Secretary of Labor, and (3) file an annual financial report with the Secretary of Labor.  *See* 29 U.S.C. § 431(a), § 431(b).  Section 201(c) of the statute, which concerns gaining access to such reports by members of a union, states that

> Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report.  The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

*Id.* § 431(c) ("Section 201(c)").  The House Report explained that

> It is the purpose of this bill to insure [sic] that full information concerning the financial and internal administrative practices and procedures of labor organizations shall be, in the first instance available to the members of such organizations. In addition, this information is to be made available to the Government, and through the Secretary of Labor, is to be open to inspection by the general public.  By such disclosure, and by relying on voluntary action by members of labor organizations, it is hoped that a deterrent to abuses will be established.

*Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771, 780 (D.C. Cir. 1984) (quoting House

---

[15] Given the posture of this litigation, I construe Defendants' standing argument as an argument that Plaintiffs' claim is moot.  *See Zinke*, 2020 WL 5766323, at *3 ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

Comm. on Education and Labor, Labor-Management Reporting and Disclosure Act of 1959, H.R.Rep. No. 741, 86th Cong., 1st Sess. 7–8). "Courts have found that the Section 201(c) disclosure requirements aid union members, who are often in the best position to discover corruption within their organizations." *Bembry*, 2009 WL 690245, at *2.

In *Phelan*, the Second Circuit held that a Title I LMRDA claim should be dismissed for lack of subject matter jurisdiction where union members brought suit against a union of which they were not members. 973 F.2d at 1055–57. The Second Circuit explained that the LMRDA "regulates only the relationship between the union and its members." *Id.* at 1056. The court analyzed numerous cases, observing that "we have held that we have subject matter jurisdiction to hear only those suits brought by plaintiffs against unions rather than employers," and "courts have refused to entertain suits by plaintiffs against unions that have rejected them for membership, or refused them transfers." *Id.* at 1056 (collecting cases) (internal citations omitted).

I have not located caselaw stating explicitly that non-union members may not bring suit pursuant to Section 201(c); however, the text of the statute is clear—the statute applies to suits brought by members of a union. *See* 29 U.S.C. § 431(c) ("shall be under a duty enforceable at the suit of any member of such organization").[16] A comparison between Title I and Title II further supports this finding, since both reference the rights of members to bring actions in court and examine the books, records and accounts of unions. *Compare id.* § 411 (referring to "every member") (explaining that "no labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency petition")

---

[16] I note that the District of Columbia Circuit has held that a Section 201 claims survives a union member's death, and that the deceased plaintiffs "fellow union members" could be substituted as plaintiffs. *Mallick v. Int'l Bhd. of Elec. Workers*, 814 F.2d 674, 677 (D.C. Cir. 1987). This, however, does not change my determination given that Plaintiffs have voluntarily resigned their LEEBA membership.

*with id.* § 431(c) ("Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization . . . to permit such member for just cause to examine any books, records, and accounts necessary to verify such report.").  Finally, this conclusion is logical given that the purpose of Section 201 is to protect the interests of union members and increase transparency within the union.  *See Bembry*, 2009 WL 690245, at *2.  It is clear that Congress intended Title II of the LMRDA to protect the interests of union members, and it did not intend to create rights for non-union members injured in some way related to a union such that they could seek redress.  *See Phelan,* 973 F.2d at 1055. ("Congress did not intend Title I of the LMRDA to create a panoply of rights to which all persons injured in some way relating to a union may turn when seeking redress.")

A change in the status of the parties can moot a claim.  *See DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (finding law school applicant's affirmative action challenge moot where applicant "did not cast his suit as a class action" and would graduate from law school regardless of the Court's decision, and explaining that "determination by this Court of the legal issues tendered by the parties is no longer necessary to compel that result, and could not serve to prevent it"); *Fox*, 42 F.3d at 137.  As I noted, *supra* Section IV.A.2, since Plaintiffs' Second Amended Complaint was filed in 2015, their status in the union has changed.  Vandermark retired in 2015 and has not paid dues since his retirement, (Defs.' 56.1 ¶¶ 15–16), and Terminelle and Mateer voluntarily resigned from LEEBA in 2018, (*see* Buono Decl. Exs. F, G).

Much of Plaintiffs' opposition focuses on the fact that Plaintiffs were members of LEEBA at the time that the action was filed and during the relevant events.  (*See generally* Pls.'

19

Opp. 7–10) (arguing that "at the time this action was filed, all three Plaintiffs were active members in good standing.  However, even more relevant to Defendants' current argument, all three Plaintiffs were members in good standing during the time of the alleged violations as outlined in the SAC.").)  Plaintiffs cite to *Jiggetts v. Local 32BJ SEIU*, 2010 U.S. Dist. LEXIS 38423 (S.D.N.Y. Feb. 24, 2010) for the proposition that the court "determined Plaintiff's standing to bring his claims based on whether 'he was in fact a member of [the union] at the time of the alleged violations.'"  (Pls.' Opp. 7 (citing *Jiggetts*, 2010 U.S. Dist. LEXIS 38423, at *12).)  Plaintiffs' citation is misleading.  In *Jiggetts*, the court dismissed a plaintiff's LMRDA Title I claim because he failed to show any facts to demonstrate that he was a member at the time of the alleged violations.  *See* 2010 U.S. Dist. LEXIS 38423, at *12.  As an initial matter, *Jiggetts* supports the notion that a plaintiff must be a member of the union in order to bring suit under the LMRDA.  In any event, *Jiggetts* did not address the circumstances at issue here—the resignation of union membership after bringing a Title II claim, and it did not hold that membership at the time of alleged violations mitigates a mootness challenge where an individual was not a union member throughout a litigation.  Plaintiffs conclusorily state that they are still LEEBA members and focus on the fact that they were members at the time the action was filed and during the relevant events.  This, however, is irrelevant to the mootness issue I must determine.  Put simply, Plaintiffs have failed to put forth evidence, other than contradictory and conclusory statements, to show that they are still members of LEEBA, and Section 201(c) applies only to union members.

Plaintiffs apparent request for declaratory relief, (*see* SAC ¶ 157), does not militate against finding Plaintiffs' claim to be moot, because it is just a disguised request for injunctive relief—Plaintiffs seek production of LEEBA's financial disclosures and books and records, (*see*

*id.* ¶ 189(E)–(F)).  Moreover, "if a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies." *Zinke*, 2020 WL 5766323, at *10.  Plaintiffs do not argue that an exception to the mootness doctrine applies, and I find that none does.  *See Comer v. Cisneros*, 37 F.3d 775, 798–99 (2d Cir. 1994) (explaining exceptions to mootness doctrine).[17]

Finally, I consider whether Plaintiffs' request for attorney's fees and costs saves their claim.   Section 201(c) provides that "The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  As a matter of first impression, the Seventh Circuit concluded that with regards to Section 201(c), "the plaintiff must prevail by judgment in order to receive an award of attorneys' fees.  'In addition to any judgment awarded to the plaintiff' implies a favorable judgment.'"  *Stomper v. Amalgamated Transit Union, Loc. 241*, 27 F.3d 316, 318 (7th Cir. 1994) (citing 29 U.S.C. § 431(c)).  It does not appear that the Second Circuit has addressed this question; however, Section 201(c)'s language is very similar to that of the Fair Labor Standards Act ("FLSA").  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  The Second Circuit has interpreted this to mean that a prevailing plaintiff is entitled to reasonable attorneys' fees and costs, which includes the contexts of fee applications following a favorable ruling for plaintiff and settlement.  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

---

[17] Plaintiffs have styled themselves as "members of a Class of approximately 190 Police Officers Similarly Situated," (SAC caption)—Plaintiffs, however, have not moved for class certification, and I have not certified this case as a class action.  "[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Fox*, 42 F.3d at 142 (observing that Plaintiffs had not made any attempt to be certified as a class and affirming dismissal of case as moot).

I find the Seventh Circuit's analysis of Section 201(c), the discretionary nature of Section 201(c), and the Second Circuit's interpretation of the similar FLSA fees provision to be persuasive.  Here, I have not awarded any judgment in favor of Plaintiffs, and even more broadly, my decision is unfavorable to Plaintiffs.  *Cf. Lu Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *2 (S.D.N.Y. May 12, 2021) ("Plaintiffs are the prevailing party for the purposes of the FLSA and NYLL if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (internal quotation marks omitted).  "Without a substantive claim on which to prevail, a party obviously cannot claim any entitlement to these fees or costs."  *Arline*, 404 F. Supp. at 529 (finding that attorney fee's claim could not support standing where substantive claim was moot, and fees statute only applied to prevailing party).  Plaintiffs request for attorney's fees therefore cannot rescue their claim.

In short, because I "have no license to retain jurisdiction over cases in which one . . . of the parties plainly lacks a continuing interest," Plaintiffs' Title II claim must be dismissed. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

### C.    *Supplemental Jurisdiction*

Plaintiffs bring claims pursuant to New York Labor Law Sections 720 *et. seq.* and 726 *et. seq.*, and state that jurisdiction is conferred pursuant to 28 U.S.C. § 1367, the supplemental jurisdiction statute.  (SAC ¶¶ 21, 159–72, 179–85.)  A court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because I have dismissed Plaintiffs' Title II claim—the only claim I had original jurisdiction over—I decline to exercise jurisdiction over

Plaintiffs' New York Labor Law claims.[18]  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d

118, 122 (2d Cir. 2006) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173

(1997) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction

by enumerating the circumstances in which district courts can refuse its exercise.'")); *see, e.g.*,

*Gonzalez v. NYU Langone Hosps.*, No. 1:18-CV-01797-MKV, 2021 WL 4226042, at *8

(S.D.N.Y. Sept. 16, 2021) (declining to exercise supplemental jurisdiction over state law claims

where court granted defendants' summary judgment motion on only claim that was based on

federal question jurisdiction); *Tortorici, v. Bus-Tev, LLC*, No. 17-cv-7507 (PAC) (KHP), 2021

WL 4177209, at *3 (S.D.N.Y. Sept. 14, 2021) (same).

### V.  Conclusion

Accordingly, for the aforementioned reasons, Defendants' motion for summary judgment

is GRANTED.  Plaintiffs' case is dismissed.  The Clerk of Court is respectfully directed to

terminate docket entry 79, and to close this case.

SO ORDERED.


Dated: October 6, 2021
    New York, New York

                                               Vernon S. Broderick
                                               United States District Judge

---

[18] Jurisdiction cannot be predicated on diversity because Plaintiffs are New York citizens, (*see* SAC ¶¶ 29–31), and LEEBA's membership almost certainly includes New York citizens, (*see id.* ¶ 8) ("Union membership is composed of approximately one hundred ninety (190) members who form a single classification of EPOs employed by the City of New York"), and included New York citizens (Plaintiffs) at the time the complaint was filed.  *See Riordan v. Am. Fed'n of Gov't* Emps., AFL-CIO, No. 01 CIV. 1136 (SAS), 2001 WL 1352464, at *2 n.1 (S.D.N.Y. Nov. 1, 2001) ("For diversity purposes, labor unions are not citizens at all, thus requiring a court to look to the citizenship of each member of the union."); *U.S. Postal Serv. v. American Postal Workers Union*, 564 F. Supp. 545, 547 (S.D.N.Y.1983) (no diversity where plaintiff, a New York resident, was a member of the defendant union).